947 F.2d 951
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David SEROR, Chapter 7 Trustee for Universal Heritage
Investments Corporation, Plaintiff-Appellant,
and
Richard Murphy, as Executor of the Estate of Anna Marie
Murphy, deceased, and Richard Murphy, and Myrna
Murphy as Successor Trustee of the Anna
Marie Murphy Trust, Plaintiff,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.
David SEROR, Chapter 7 Trustee for Universal Heritage
Investments Corporation, Plaintiff,
and
Richard Murphy, as Executor of the Estate of Anna Marie
Murphy, deceased, and Richard Murphy, and Myrna
Murphy as Successor Trustee of the Anna
Marie Murphy Trust, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.
David SEROR, Chapter 7 Trustee for Universal Heritage
Investments Corporation, Richard Murphy, as Executor of the
Estate of Anna Marie Murphy, deceased, and Richard Murphy,
and Myrna Murphy as Successor Trustee of the Anna Marie
Murphy Trust, Plaintiffs-Appellees,
v.
The HARTFORD ACCIDENT INDEMNITY COMPANY, National Union Fire
Insurance Company, Defendants,
and
Insurance Company of North America, Defendant-Appellant.
 Nos. 90-55415, 90-55419 and 90-55420
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 6, 1991.
Decided Oct. 24, 1991.
 
 Before CANBY and RYMER, Circuit Judges, and LEVI, District Judge.*
 MEMORANDUM**
 This case arises out of an insurance coverage dispute. David Seror is the Chapter 7 bankruptcy trustee for Universal Heritage Investment Corporation ("UHIC"), a securities broker/dealer firm. Richard Murphy is the executor of the estate of Anna Marie Murphy who was a customer of UHIC. The trustee and executor sued Insurance Company of North America ("INA") claiming that INA had failed to indemnify UHIC, under the terms of a fidelity bond, from a judgment against UHIC in favor of the estate of Murphy. At trial the jury rendered judgment for INA. The trustee and executor now appeal.
 I.
 Anna Marie Murphy, a retired school teacher, entrusted her life savings to Hugh Mulhern, a Branch Manager of UHIC. Mulhern squandered Murphy's money. Upon Murphy's death, her executor discovered the loss and filed suit against UHIC in California Superior Court in 1980. A judgment against UHIC for $1.3 million was entered on August 12, 1985. The jury specifically found that Mulhern was an employee of UHIC, that he committed fraud, and that his fraud caused Murphy's loss.
 The National Association of Securities Dealers requires securities broker/dealer firms such as UHIC to maintain a Securities Dealer Blanket Bond. INA issued such a bond to UHIC for losses due to employee fraud, discovered between 1979 and 1982. UHIC claimed that it discovered Mulhern's fraudulent conduct in 1980 when it was sued by Murphy's executor. When INA refused to cover the loss, UHIC and the Estate of Murphy brought this action against INA for breach of contract and statutory duties.
 The parties agreed to a three stage trial in which the coverage issue was presented in the first stage of the trial.[1] The coverage issue was based on INA's contention that Mulhern was not an "employee" under the terms of the bond. INA argued that Mulhern was an independent contractor rather than an employee, and that even if Mulhern were not an independent contractor, the parties had mutually agreed that the bond did not cover registered representatives such as Mulhern.[2] The district court ruled that the term "employee" in the INA bond was subject to interpretation. In reliance on Pacific Gas & Elec. v. G.W. Thomas Drayage & Rigging Co., Inc., 69 Cal.2d 33, 69 Cal.Rptr. 561 (1968), the district court permitted INA to admit parol evidence to prove that the parties had a special, mutual agreement that the term "employee" did not include registered representatives. The parol evidence consisted of testimony from Milton Buell, an insurance agent for UHIC, John Kirk, Sr., the President and owner of UHIC, Russell P. Sanders, the Compliance Officer for UHIC from 1973 to 1978, and David C. Ruth, the Executive Vice-President of UHIC from 1978 to 1981.
 The court submitted special interrogatories to the jury regarding the coverage questions. One question asked whether Mulhern was an "employee," to which the jury answered affirmatively. A second special interrogatory asked:
 Did Universal Heritage Investments Corp. and INA mutually intend that Hugh Mulhern would fall outside the coverage of 'employees' under the Form 14 fidelity bond?
 The jury also answered yes to that question. Judgment was entered for INA and this appeal followed.
 The UHIC trustee and Murphy executor contend that the district court erred by 1) admitting extrinsic evidence regarding the term "employee" as used in the bond, 2) finding that substantial evidence supported the jury's determination that the parties had agreed on a special meaning of the term "employee" in the bond, 3) instructing the jury on Milton Buell's authority as an agent of UHIC and refusing protective instructions regarding his agency, and 4) denying plaintiffs' motion for a directed verdict.
 II.
 A. ADMISSION OF PAROL EVIDENCE
 INA contended at trial that the term "employee" had a special meaning between the parties, and that it did not include registered representatives such as Mulhern. Plaintiffs contended that the meaning of "employee" was plain and unambiguous and that the parties never mutually agreed to any meaning other than the common and common law usage of "employee." The district court ruled that, although the term "employee" on its face was unambiguous, defendant could present parol evidence to show that the parties mutually intended to give the term a special meaning. On appeal, this court reviews in two steps rulings on the admissibility of evidence that necessarily involve a substantive legal decision. The court first reviews de novo the substantive legal decision and then reviews the evidentiary ruling under the abuse of discretion standard. Stokes v. Georgia-Pacific Corp., 894 F.2d 764 (5th Cir.1990).
 Parol evidence may be admitted to interpret or explain the meaning of the terms of a written agreement. Cal.Code of Civ.Proc. § 1856; 14 Cal.L.Rev.Comm.Reports 143 (1978). Justice Traynor's opinion in P.G. & E. provides the following guidance:
 
 
 1
 The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.
 
 
 2
 69 Cal.2d at 37.
 
 
 3
 The district court struggled to reconcile the parol evidence rule as set forth by Justice Traynor, with the rules of interpretation for insurance contracts. The California Supreme Court recently restated the principles of insurance policy interpretation including the importance of mutual intent. The Court held that an interpreter must look to the mutual intent of the parties at the time the contract was formed as expressed in the "clear and explicit" meaning of the written provisions of the contract. AIU Ins. Co. v. FMC Corp., 51 Cal.3d 807, 822-3, 274 Cal.Rptr. 821, 831 (1990). Terms must be interpreted in their " 'ordinary and popular sense' unless used by the parties in a technical sense or a special meaning is given to them by usage." Id. Ambiguities are to be resolved in favor of the insured's understanding at the time the contract was entered. Id. Remaining ambiguities are resolved against the party who caused them, normally the insurer, as the insurer normally drafts the standardized contract form. Id. See e.g., Garcia v. Truck Ins. Exchange, 36 Cal.3d 426, 438, 204 Cal.Rptr. 435 (1984).[3] Under California law, therefore, insurance contracts must be interpreted to give terms their ordinary and clear meaning, unless the parties gave them a special meaning. Plaintiffs' contention that the admission of parol evidence to construe the written terms of a standard form insurance contract conflicts with well settled rules of insurance contract construction is not well taken.
 
 
 4
 Interpreting the INA Bond according to the above stated rules, the term "employee" must be given its "clear and explicit" meaning interpreted in the "ordinary and popular" sense, unless the parties mutually intended it to have a "special meaning." INA offered to prove that UHIC and INA mutually intended that the term "employee" in the broker's blanket bond did not include registered representatives such as Mulhern. The district court permitted INA to introduce parol evidence to prove this special meaning of the term "employee." The district court appropriately was concerned that excluding evidence of the meaning the parties attributed to the word "employee," "merely because the words do not appear ambiguous to the reader could easily lead to the attribution to a written instrument of a meaning that was never intended." P.G. & E., 69 Cal.2d at 40. Admission of this evidence was not error. INA offered to prove that the parties did not intend that registered representatives be covered as "employees" under the broker's blanket bond by providing evidence of industry practice, testimony of UHIC principals, and from UHIC's applications for broker's bonds submitted over the course of several years. This proof of mutual intent was properly admitted. The testimony did not violate the rules of insurance contract interpretation, particularly since the reasonable expectation of the insured, according to the proposed testimony, was that registered representatives were not covered under the bond.
 
 
 5
 B. SUFFICIENCY OF THE EVIDENCE OF MUTUAL INTENT
 
 
 6
 Appellants further contend that the evidence of a special meaning of the employees covered was insufficient because there was no proof of INA's intention and INA failed to provide contract language or a written instrument reflecting the parties' mutual intent that registered representatives would not be covered. The latter allegation has been addressed in the preceding section. The sufficiency of the evidence proving the parties' mutual agreement that registered representatives would not be covered is demonstrated from the record.
 
 
 7
 INA proved that UHIC, through knowledge conveyed to it by its insurance agent Milton Buell, agreed and understood that registered representatives were not covered under the INA bond. Buell testified that he concluded that registered representatives were not covered under a Form 14 bond based upon his conversations with underwriters, including those of INA (R.T. 545:10-16).
 
 
 8
 Appellants contend that Buell's view was irrelevant because it was simply one layperson's interpretation of the bond as applied to the circumstances here. However, several UHIC managers, except owner John Kirk, Sr., testified that UHIC did not intend that its registered representatives would be covered by the broker's blanket bond. The UHIC officers who testified to their belief that UHIC's registered representatives were not covered under the broker's blanket bond included Russell P. Sanders, Compliance Officer for UHIC from 1973 to 1978, (R.T. 691:16-19; 694:3-14; 697:16-18) and David C. Ruth, Executive Vice-President of UHIC from January 1978 to January 1981, with responsibility for compliance and the procurement of insurance (R.T. 564:9-17; 565:9-10; 566:6-10). It was within the province of the jury to find this testimony convincing and reject that of owner Kirk.
 
 
 9
 The jury also heard testimony from Charles Frey, an underwriter with Fireman's Fund, that UHIC had previously obtained a position schedule bond from Fireman's Fund covering UHIC's registered representatives, but that this coverage was dropped effective January 31, 1977, and only the Form 14 Broker's Bond was continued. Each of the bond applications prepared by UHIC for Fireman's Fund required a list of employees, persons or positions covered. The position schedule bond listed all of UHIC's registered representatives by name, and Frey testified that a copy of each person's NASD application and a credit report were obtained to assist the underwriters in evaluating the risks. Buell echoed Frey's testimony by testifying that UHIC had previously obtained a position schedule bond covering registered representatives and that UHIC dropped that bond without continuing coverage naming its registered representatives.
 
 
 10
 Finally, INA demonstrated that the Form 14 bond renewal applications which UHIC completed prior to obtaining the INA bond at issue here required UHIC to specify the employees to be covered.[4] The list of employees submitted with the INA application included officers, managers, and clerical staff of UHIC. It did not include registered representatives and did not list Mulhern individually. Trial Exhibits 1020, 1024 and 1027. The list only contained the names of UHIC's approximately 20 officers, managers and clerical employees. Id. By contrast, the number of registered representatives ranged up to 200 and would have involved substantially increased coverage.
 
 
 11
 Buell's testimony that he obtained an understanding from numerous underwriters, including underwriters of INA, that registered representatives were not covered by the Form 14 Broker's Bond thus did not stand alone. Further, there was no evidence that his understanding was incorrect. Buell's testimony was probative not only of UHIC's intent but also of custom and usage among fidelity bond underwriters that registered representatives were not routinely covered by the Form 14 Broker's Bond. Moreover, Buell's role as insurance agent to UHIC makes him a direct witness in this case to UHIC's understanding, not simply an expert on fidelity bonds. The jury could conclude from all of this testimony that by UHIC's own practice and understanding, as well as by industry practice, registered representatives were not covered by a broker's bond but only by a position schedule bond.
 
 
 12
 Although the evidence of UHIC's intent was more extensive, there was also sufficient evidence before the jury of INA's intent. The jury could infer INA's intent from industry custom and from Buell's testimony that his understanding of industry custom was based on discussions with INA underwriters among others. Further evidence of INA's intent could be deduced from the application section of the fidelity bond, which identified no registered representatives as covered employees. Finally, subsequent to UHIC obtaining the Form 14 broker's blanket bond from INA at issue here, INA provided a premium quote to UHIC for a position schedule bond. If INA had understood its Form 14 bond to cover registered representatives, this quote would have been unnecessary. Subsequent act evidence is admissible to show an earlier intent. See United States v. Ayers, 924 F.2d 1468, 1472 (9th Cir.1991); Eaves v. Penn, 587 F.2d 453 (10th Cir.1978).
 
 
 13
 In short, the evidence was sufficient for a reasonable jury to conclude that INA and UHIC mutually intended that registered representatives would not be covered under the INA bond. For the same reasons, it was not error to refuse UHIC's motion for a directed verdict on the ground that INA failed to prove a mutual intent of the parties.
 
 
 14
 Appellants also challenge the court's jury instructions regarding Buell's agency. Their argument pertains to the jury's potential use of Buell's testimony to conclude that the registered representatives were independent contractors rather than employees. However, at the beginning of Buell's testimony, the trial court gave the jury a detailed limiting instruction. He instructed the jury that Buell's testimony only pertained to the issue of whether the parties mutually intended that registered representatives be covered by the Form 14 bond. Moreover, the jury determined that the registered representatives were employees and not independent contractors. Thus, assuming arguendo that the jury instructions on agency were erroneous, they do not appear to have prejudiced appellants in any way. The jury was instructed not to consider Buell's testimony as to the employee/independent contractor question, and the jury found for appellants on this issue in any event. The court, therefore, does not need to determine whether or not the particular instructions on agency were correct.
 
 
 15
 AFFIRMED.
 
 
 
 *
 David F. Levi, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The second stage of the trial was to determine whether the insurer had acted in bad faith, and the third stage was to determine damages. The trial did not progress beyond the first stage after the jury determined that the parties had mutually agreed that registered representatives were not covered under the Bond
 
 
 [2]
 The bond defines employees as "the insured's officers, clerks and other employees employed by the Insured during the currency of this bond...." Trial Exhibit 1032. The application portion of the bond states as follows: "All of the employees of the Applicant, of whom a complete list at the time the bond(s) become effective, with positions held, is attached, ... The applicant hereby agrees to furnish to the Company on or about the premium expiry date of the bond concerned herewith a list of all the employees in the service of the Applicant, in order that such list may be made a basis of the premium to be paid on the bond for the ensuing premium period, if the bond is continued." Id
 
 
 [3]
 The court in Garcia, however, refused to construe an insurance policy against the insurer where the terms of the hospital liability contract were negotiated by a large association of California hospitals, terms were jointly drafted and the parties were of substantially equal bargaining power. Garcia, 36 Cal.3d at 439; accord 13 Appleman, Insurance Law and Practice (1981) § 7402, pp. 300-301
 
 
 [4]
 The bond application narrowed the definition of employee in the bond by requiring that a complete list of all current employees be attached to the application and that this list be updated at each premium expiry date so that the list could be made a basis for the ensuing bond premium