## D'AQUIN et al. v. BARBOUR.

4 441
Case 2
113 454

Parol evidence is admissible to show the nature and extent of premises leased by an act *sous seing privé*, when, from the indefinite language of the written instrument, it is necessary, to ascertain the intention of the parties.

Where the intention of the parties is doubtful, the manner in which a contract has been executed by one with the assent of the other, will determine the construction to be put upon it.

Antecedent conversations respecting a contract which the parties subsequently embody in a written instrument, are inadmissible, where fraud is not charged.

D'AQUIN
*v.*
BARBOUR.

APPEAL from the Second District Court of New Orleans, *Canon*, J. *Wolfe* and *Singleton*, for the plaintiffs. *T. H. Howard*, *Larue* and *Ross*, for the appellant. The judgment of the court was pronounced by

SLIDELL, J. On the 28th October, 1848, a lease of certain premises, for a term of five years, was made by the defendant to the plaintiffs, who carried on the business of bakers ; and the plaintiffs gave sixty notes for the monthly rent. On the 21st of March, 1849, the plaintiffs instituted this suit, claiming the dissolution of the lease with damages, on the ground that "the defendant has failed to deliver to the plaintiffs all the buildings by him leased to the pla intiffs, and indispensable for them to carry on their said trade. That the part of said buildings, [withheld] consists in a store adjoining the entrance of said establishment on Levée street, which, according to said lease, and in conformity to his promises, the said *Barbour* was bound to deliver to the petitioners."

Before considering the terms and effect of the lease, it is proper to notice the nature of the property of which the defendant was owner when the lease was made. It was a lot of ground having a front on New Levée street, and running back to Commerce street. Fronting on New Levée, was a brick building occupying the entire width, and three stories in height, and across the entire front, between the second and third stories, was a sign, " Union Bakery." The lower story, in front, was divided into nearly equal portions, by a partition. One portion, having a depth of about 32 feet, was arranged and occupied as a clothier's shop. It was rented in December 1847, for one year, by *Barbour* to *Mayers*, and this lease was renewed between them, in December, 1848. *Mayers* has been in possession during the whole period, carrying on his business of a clothier in this apartment. The other portion had been used since the erection of the building by *Barbour* as a baker's shop, having a like depth of thirty two feet. The entire width back of the baker's and clothier's shop's was used by *Barbour* for storing purposes, in his business of a baker. Back of this, and occupying also the entire width was a bakery, and still further in the rear were arrangements for horses and drays, used in his business.

The lease to the plaintiffs is in writing, and contains the following expressions and covenants : " The said lessor lets and hires to the said lessees, for the period of five years, commencing on the 1st November, 1848, the premises now and heretofore occupied by him as the Union Bakery, situated on New Levée street, and extending through to Commerce street; and further, the lessor lets and hires as aforesaid, and as a portion of said bakery, eight certain negroes, and certain other property, consisting of the steam engine, biscuit machine, troughs, breadboxes, cloths, and the fixtures on the premises used in carrying on the business of said bakery, the whole of which are particularly enumerated and described in the inventory annexed, marked A., and accepted by the parties to this contract of lease as a portion thereof." This inventory contains the names and ages of the slaves, who are ranged under two classes with reference to their different values and rates of hire as specified in the lease; also an enumeration of the machinery, fixtures, and apparatus, of a baker's establishment. It is silent as to the apartment occupied as a clothier's shop. The lease then contains, among othes clauses, the following : 1st. " The said lessees shall have the use and control of the said *bakery and property*, during the term of five years aforesaid, &c. 4th. The said lessor shall, according to law, keep *that portion of the buildings in which said premises are contained* in good tenable [*Sic* in lease] condition as the same now are during the period of said lease. 5th. The said lessor binds himself to sell

to the said lessees, at the expiration of the second year of the period of said lease, his *premises and property*, at 98 New Levée embracing that described and enumerated in the said inventory, for the sum in cash of $30,000." In the statement of the obligations of the lessees, we find the following : 1st. "The said lessees take the said *bakery* and *property embraced in said inventory*, in the good order and condition in which they now are, and engage, during the period of said lease, to keep the same in the like good order, &c. 2d. The said lessees shall incur all risk and expense resulting from the sickness or running away of the negroes, &c. 4th. And the said lessees bind themselves to pay to the said lessor the sum of $4000 per annum, for the said *bakery and property aforesaid*," &c. And it is provided and agreed that if the said lessees should, at the expiration of the second year of the period of said lease, neglect to pay to said lessor the sum of $30,000 as aforesaid in cash, for the premises aforesaid of 98 New Levée, and *property* embraced in said inventory as vendees of said lessor and owner, then and from the time of said sale and payment this instrument of lease shall be null and void, and the said lessor shall deliver to said lessees all of the said promissory notes given for the said rent, &c.

We have no hesitation in saying that, parol evidence was properly received by the court below, for the purpose of showing the nature and distribution of the property which forms the subject of the controversy. The property was described in the introductory clause of the lease, as the premises now and heretofore occupied by *Barbour*, as the " Union Bakery," situated on New Levée street, and extending through to Commerce street ; and for the purpose of ascertaining the nature of the subject, parol evidence to show what premises were then, and had been theretofore, occupied as the Union Bakery, was proper and even necessary. The intention of the parties was to be ascertained, and that intention could not be reached without an explanation of the situation and nature of the property. See Greenleaf on Evidence, § 286, and the cases there cited. When that necessary explanation is brought into juxtaposition with the language of the instrument, both in the introductory clause and in those which follow it, it is difficult to resist the conviction that, the bakery and its appurtenances, as occupied by *Barbour*, was the object of the lease ; and, that the apartment then, and theretofore occupied as a clothing store by another person, and which was not necessary for the business of the plaintiff, did not enter into their contemplation. It must be observed that the lot of land, *eo nomine*, is not leased. There is no sweeping expression in the leasing clauses, that would bring the entire premises under the lease. "The Bakery" is the repeatedly recurring expression. The fourth clause, in which the lessor binds himself only to keep in good order *that portion* of the buildings in which said premises are contained, appears to us quite repugnant to the construction claimed by the plaintiffs.

It is not to be supposed that, in making so important a contract, and in inserting the description "the premises now and heretofore occupied by him (*Barbour*) as the Union Bakery," the plaintiffs had not first carefully inspected the property which they proposed to lease. Its arrangement was before their eyes, and they saw an establishment occupied by another person and wholly disconnected with the business which *Barbour* had prosecuted, and in which they were about to succeed him. It is extraordinary, if they expected to get the clothier's shop under the lease, that they should not have expressed it in the written agreement.

We believe that in the stipulation for sale, the parties did intend to cover the entire property; but the language they use in those clauses which point to a sale, is certainly broader than is found in the stipulations of lease.

D'AQUIN
v.
BARBOUR.

The case of the defendant is much strengthened by resorting to the principle which is embodied in the 1951st article of the Code. "When the intent of the parties is doubtful, the construction put upon it by the manner in which it has been executed by both, or by one, with the express or implied consent of the other, furnishes a rule for its interpretation." Now here the plaintiffs went into possession of the bakery and the rest of the premises, but they did not ask *Mayers* to go out; they did not ask him to pay them the rent, nor give him any notice that he was to consider himself their tenant; and, without any objection whatever, so far as the testimony informs us, they seem to have contented themselves with the residue of the premises, and to have paid, as they fell due, the first four notes for rent, to *Barbour*.

Parol testimony was introduced, respecting the conversations of the parties while negotiating respecting the lease, for the purpose of showing that it was understood that the plaintiffs were to have the rent of the clothier's shop. We think these antecedent conversations respecting a contract which the parties have embodied in a written instrument, were inadmissible, there being no fraud in the confection of that instrument, or otherwise alleged or proved.

It is, therefore, decreed that, the judgment be reversed, and that there be judgment for the defendant, with costs in both courts.