619 So.2d 585 (1993)
Bryan J. SLOANE, Jr., et al., Plaintiffs-Appellees,
v.
Edward Mike DAVIS, d/b/a Tiger Oil Company, Defendants-Appellants.
No. 92-31.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1993.
Rehearing Denied June 25, 1993.
James G. Dubuisson, Opelousas, for plaintiffs-appellees.
A.J. Gray III, Lake Charles, for defendants-appellants.
Before GUIDRY, STOKER, DOUCET, THIBODEAUX and COOKS, JJ.
COOKS, Judge.
This protracted litigation seeks specific performance of an employment contract between Bryan J. Sloane, Jr., a geologist, and Edward Mike Davis, d/b/a Tiger Oil Company, an independent oil operator. The background facts surrounding the action were detailed in our opinion in Sloane v. *586 Davis, 397 So.2d 1376 (La.App. 3rd Cir. 1981). For convenience, we will briefly summarize the events and procedural developments giving rise to the present appeal.

FACTS AND PROCEDURAL HISTORY
Bryan Sloane was hired as a geologist by Edward Davis. The terms and condition of Sloane's employment were set forth in two letter agreements. The second letter expressly provided it was intended to supersede and replace the first agreement between the parties. Further, the new terms and conditions were made retroactive to the beginning date of Sloane's employment. The parties stipulated the second letter controls their contractual relationship. It reads in pertinent part as follows:
"Furthermore, Davis hereby grants to employee the option of purchasing an overriding royalty on all oil, gas and mineral leases acquired by Davis as a result of employee's services or as a result of efforts of other members of the office wherein employee renders his services. Employee's cost of said overriding royalty shall be $10 per prospect." "At any time that over $150 per acre bonus or consideration is paid for acquiring leases, then the overriding royalty amount to be received by employee shall be negotiated between employee and Davis. However, it shall never exceed 1% of 8/8ths. The amount of overriding royalty available to employee is described by the following paragraphs:
(1) On prospects generated by employee, he shall be entitled to receive 1% of 8/8ths overriding royalty, so long as the royalty and/or overriding royalty interest (excluding the employee's overriding royalty) shall not exceed a 1/6th total royalty. If Davis gives more than a 1/6th royalty and/or overriding royalty interest, then the overriding royalty interest hereinabove provided for shall be proportionately reduced.
(2) On any prospect reviewed and interpreted by employee, other than his own original prospects, as defined in paragraph 1 above, located in South Louisiana which, for purpose of this letter, shall embrace an area located on the northern boundaries of Beauregard, Allen, Evangeline, St. Landry, Pointe Coupee, West Feliciana, East Feliciana, St. Helena, Tangipahoa and Washington Parishes, Louisiana, to the southern boundary of Zone 1, employee shall receive a ½ of 1% of 8/8ths overriding royalty interest. However, any prospect, whether it be self-generated and be deemed the prospect of employee, or any other prospect reviewed and interpreted by employee not being his prospect, shall be sent by registered mail to Davis for his approval by the division manager. Such prospect shall include the terms and conditions of the entire prospect, delineated by section, township and range, or by outline, along with the amount of overriding royalty to be received by employee. Should Davis concur, he shall return a copy to the division manager, appropriately signed, and retain a copy in the Houston Office." (Emphasis Added)
The facts relevant to our review involves the acquisition of a mineral lease by Davis. Desiring to strengthen his on-going drilling operations on family property, John Mecom contacted Davis to discuss the possibility of them entering a "joint venture" to explore and produce oil and gas on the land.
In pursuit of this venture, Davis assigned Sloane to conduct geological and feasibility studies on the property. He also instructed Sloane to consult with Lee Morgan, a geologist in New Orleans working with Mecom. Morgan had prepared, previously, certain geological maps designating oil and gas prospects on the land. Acquiring these maps and securing additional geological information, Sloane drafted several maps of the subsurface area covering various sections of the Mecom property. Following completion of his studies, Sloane submitted a written report to his immediate supervisor recommending that Davis join Mecom in the drilling operations. Sloane's supervisor concurred in the recommendation and Davis executed a mineral lease with the Mecom family affecting the entire estate, consisting of 27,000 acres. Shortly thereafter, drilling on one prospect commenced *587 on the Mecom property and production was obtained.
Pursuant to the employment agreement, Sloane mailed a letter to Davis seeking assignment of overriding royalty "earned" by him from the Mecom lease and under another lease in St. Landry Parish. Davis responded agreeing to assign Sloane an override under the St. Landry Parish lease which Sloane "generated;" but he refused to assign Sloane any royalty from the Mecom lease for two alleged reasons: (1) the lease had been "generated" by Davis; and (2) the registered mail notice requirement recited in paragraph 2 of the letter agreement had not been fulfilled by Sloane.
Sloane and his wife instituted suit claiming ownership of ½ of 1% of 8/8ths overriding royalty interest in the mineral lease involving the Mecom property. Finding the contract ambiguous, the trial judge allowed introduction of parol evidence to show whether the parties intended to exclude the Mecom lease from the employment contract. He dismissed Sloane's suit holding, first, it was not the parties' intent to apply the contract to the Mecom land; and, second, the lease was not "generated" by Sloane's services or that of co-employees in his office. Rejecting both holdings, we refused to consider any parol evidence resolving that the contract was not ambiguous. Scrutinizing the "wording" of the letter, we found Sloane met the second condition of the agreement by "reviewing and interpreting" the Mecom prospect which "service" resulted in Davis' perfection of the lease. We also held Sloane satisfied the notice requirement provision.
On remand, the District Court awarded Sloane an overriding royalty interest in the entire Mecom lease holding, in part, that our original decision suggesting the lack of ambiguity in the letter agreement precluded further litigation in the case.
Appellants assigns three (3) trial court errors for review. They complain that our ruling on first appeal was restricted to the issue of "liability;" and it did not extend to "damages" emanating from the employment contract. Furthermore, they urged that use of the words "leases" and "prospect" in describing Sloane's royalty option makes the agreement "ambiguous" because these terms are not synonymous and do not clearly express whether the parties intended to grant Sloane an override on the "whole lease" or just those "prospects" he reviewed or interpreted involving "areas" on the Mecom land. They admit it is impossible presently to define these "areas" by designating geographical blocks or geological pools on the Mecom land. Yet, they argue parol evidence should have been admitted to determine the parties intent to limit Sloane's overriding interest to royalties derived from only these "areas" of uncertain limits on the Mecom land. Although the prospects remain undefined, they contend the geologic and geographic extent of each is susceptible of future expert determination. The final assignment questions the breath of the Summary Judgment which contains certain "nullity" language. Appellants contend this language may be construed as vitiating, wholly, a subsequent conveyance of Davis' interest in the Mecom lease to a Trust.

LAW OF THE CASE DOCTRINE
At the original trial on the merits, the parties agreed by joint motion to "sever" the case into two (2) stages: The first addressing liability and the second damages. As a consequence, the trial court restricted its consideration to the liability issue. The second phase of the trial did not commence because the judge found an absence of liability under the contract. We reversed this finding remanding the case "for further proceedings, in accordance with the stipulation of the parties for a bifurcated trial ..."
Appellant argues the trial judge erred in granting Summary Judgment without allowing introduction of parol evidence to establish the damages, i.e. extent of the overriding royalty interest owed to Sloane. They are not contesting Sloane's entitlement to royalties from the lease; but rather, they seek to limit Sloane's recovery to royalties derived solely from those "prospects" which he "reviewed and interpreted."
*588 Opposing this position, appellees rely on the "law of the case" doctrine. They assert our decision on original appeal clearly held the contract was not ambiguous; thus, a literal reading of the contract automatically defines the extent of their mineral interest as set forth in the following proviso:
"... Davis hereby grants to employee the option of purchasing an overriding royalty on all oil, gas, and mineral leases acquired by Davis as a result of employee's services ..." [Emphasis Added]
On first appeal our decision rested on an examination of sections one and two of the letter agreement to determine whether Sloane was entitled to "any interest" in the Mecom lease. We resolved that these provisions were not ambiguous; and, noted in passing that the agreement was "free of ambiguity" as to the provisions on which Sloane then relied. We did not address the ambiguity issue now before us. Our review of the introductory provision cited above was limited in scope and addressed only whether the Mecom lease was "acquired by Davis as a result of [Sloane's] services." We did not focus on the meaning of the word "leases" as used in that context or whether the proviso was intended by the parties to exclusively define Sloane's overriding royalty option.
The "law of the case" is a procedural principle which relates to the conclusive effects of appellate rulings at trial on remand. Ordinarily, the rule prohibits an appellate court from reconsidering its own rulings of law on a subsequent appeal in the same case. This principle has survived in recognition of a policy seeking to avoid "indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue." Petition of Sewerage: Water Board of New Orleans, 278 So.2d 81 (La.1973). However, this law of the case principle is purely discretionary in application. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). It is not intended as an inflexible rule especially where its application would render a manifest injustice or where the former appellate decision was clearly erroneous. Gaudet v. G.D.C., Inc., 477 So.2d 731 (La. App. 1st Cir.1985); Brumfield v. Dyson, 418 So.2d 21 (La.App. 1st Cir.1982). Unlike the present matter, most of the appeal cases applying this principle involved only questions of law decided in prior appellate decisions. Here, we must determine whether the contract sufficiently expresses the parties "intent" regarding the extent of Sloane's mineral interest in the Mecom lease. This inquiry is hybrid in nature, involving both law and facts. Moreover, we are unable to clearly determine from reading the original appeal decision whether the court found the contract unambiguous in all respects. Therefore, in exercising our discretion, we find it more appropriate and fair to decide the "ambiguity" issue raised in appellants' second assignment of error on its merit rather than apply the law-of-the case principle to this complex litigation.

AMBIGUITY ISSUE
Our resolution of this issue turns on the meaning of the words "leases" and "prospect" as used in the letter agreement. Appellants contend Sloane's override attaches only on certain "prospects." They suggest that "where [a] prospect covers more than one lease, the override applies to all leases included;" however, "where the prospect is smaller than one large lease, the override is applicable only to the prospect." Appellees urge "there is no such thing as an overriding royalty on a prospect," as a matter of law.

LAW AND ANALYSIS
Louisiana Civil Code article 2047 and 2048 provides:
Article 2047
"The words of a contract must be given their generally prevailing meaning.
Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."

*589 Article 2048

"Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract."
Prospect is a term of art which meaning is dependent on the context in which it is used as generally understood by professionals in the oil and gas industry. Providing a scholarly discussion of the term prospect and its meaning, the Court in Wurzlow v. Placid Oil Company, 279 So.2d 749, 754 (La.App. 1st Cir.1973) reasoned:
"... that in the oil and gas industry, a prospect commences with the determination of the existence of a certain geological structure, conducive to the production of oil and gas underlying a certain area of land. The actual existence of such minerals must then be determined and confirmed by actual drilling and production of said minerals. The continued exploration and drilling then determine the extent of the area underlain by the geological structure which originally formed the basis for the drilling of the first well or wells. Where by drilling it is ascertained that the limits of the producing geological structure have been reached, then the whole area underlain by the structure become a `field.' From that, we conclude that a `prospect' contemplates, in its optimum aspect, the creation of a `field'".
We adopt with full approval the meaning ascribed by the Wurzlow Court to the term "prospect" in this case. Further, our reliance on the Wurzlow decision is buttressed by the deposition testimony of Sloane's expert as follows:
"Q. In the oil and gas field, what do you consider a prospect when the term is used? What is a prospect?
A. A prospect, as it is generally used by me, would be an area in which drilling is recommended or contemplated or being considered, which if the drilling was carried out, might reasonably be expected to develop production.
Q. When you say production, do you mean only from that one well or from other wells in that area?
A. It varies a great deal. I have had prospects where we felt one well would be sufficient, and I have had prospects, such as this one, where it was obvious that a large number of wells would be required.
Q. What would be the correlation if any between what is generally called a prospect and what is called a field?

A. Well, in a true exploratory operation, which means drilling away from other production in search of absolutely new production, then if the prospect is successful, it becomes a field. It may require one or many wells to develop it adequately to secure the hydrocarbons that have been found."
Having determined that "field" and "prospect" are synonymous terms in the oil and gas industry, we must determine further whether the "proviso" granting Sloane an override on all Davis' oil, gas, and mineral leases prevents us from ascribing the accepted meaning to this term of arts as used in sections 1 and 2 of the letter agreement.
Louisiana Civil Code Articles 2049 and 2050 provide:
Article 2049
"A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."
Article 2050
"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
Keeping with the codal rules, we are unable to end our inquiry by mere examination of the contract's "introductory" provision, as suggested by Sloane. The contract must be read as a whole giving meaning to each passage. Both Sections 1 and 2 of the letter agreement clearly states "on prospect" Sloane shall be entitled to a percentage of the overriding royalty interest. Sloane's abbreviate reading of the contract would violate the rules and result in deletion of the sections. Also, we must reject Sloane's contention that these sections are meaningless because the law does not recognize overriding royalty interests "on *590 prospects." We disagree. Sloane does not cite any authority for his position; and we are unable to find any in law or jurisprudence. An override "on prospect" simply means that portion of a royalty interest which is derived from certain leases of land covering an "area" geographically defined by subsequent drilling and production which establishes the overlying sands encircling a particular reservoir or pool of oil and gas.
Therefore, we shall endeavor to ascertain what was the "common intention" of the parties by including this wording in the letter agreement. Louisiana Civil Code Article 2045. Admitting the lack of studied oil and gas Linguistics, nonetheless literal reading of the contract convinces us the terms "leases" and "prospect" are not generally used interchangeably and they do not share identical meaning in the oil and gas industry. As pointed out by appellants, an oil field, i.e. prospect, may require acquisition of multiple leases. Conversely, a lease covering a large tract of land, such as the Mecom property, may be comprised of many "prospects (fields)." According to the record, prior to Sloane's involvement with the Mecom project, four separate oil fields existed on the property upon which seventy to eighty wells had been drilled. Three of the fields were producing. Sloane reviewed five separate prospects. As confirmed by him, three of the prospects were re-entries of existing wells and two were proposed new wells.
Given these special facts and basic tenets of contract interpretation, inclusion of the term prospect in the letter agreement without explanation makes it ambiguous as to the parties' intent regarding the extent of Sloane's mineral interest in the lease encompassing the whole of Mecom's vast tract of land, already in production when "reviewed and interpreted" by Sloane. Literal reading of the introductory provision or the whole instrument does not eliminate the ambiguity. While "leases," used in the contract's proviso, is susceptible of the "all inclusive" interpretation posed by Sloane; the word "prospect," as found in succeeding paragraphs, is equally susceptible of the "more limited" interpretation voiced by Davis. This descriptive conflict is patent on the face of the document. It is just as reasonable to conclude the parties' intended to limit Sloane's interest to royalties derived from certain prospects, as it is to conclude they intended this interest to attach to the whole lease. Either interpretation will not yield absurd results in the oil and gas industry.
When it is impossible to gather the intention of the parties from a written contract, the court should permit introduction of extrinsic evidence. As a general rule parol evidence is admissible, as between the parties, to explain ambiguous terms of descriptive meaning found in contracts. The intention of the parties must be ascertained; and when that intention cannot be determined without an explanation of the situation and nature of the thing conveyed in the contract, courts are free to examine the parties' prior use of such terms or dealings on the same subject matter, the meaning generally afforded such terms when both are used in the same instrument, and other special facts peculiar to the oil and gas industry which may be helpful in arriving at the parties' true intent in so wording the agreement.
Tracking, historically, the application of this rule, the Wurzlow Court found:
"A case representing application of the general rule is D'Aquin v. Barbour, 4 La.Ann. 441 (1849), which involved a controversy over the extent of the premises described in a written lease as the `Union Bakery.' In approving the use of parol testimony to establish the exact description of the property lease, Justice Slidell said:
`We have no hesitation in saying that, parol evidence was properly received by the court below, for the purpose of showing the nature and distribution of the property which forms the subject of the controversy. The property was described in the introductory clause of the lease, as the premises now and heretofore occupied by Barbour, as the `Union Bakery,' situated on New Levee Street, and extending through to Commerce street; and for the purpose of ascertaining *591 the nature of the subject, parol evidence to show what premises were then, and had been theretofore, occupied as the Union Bakery, was proper and even necessary. The intention of the parties was to be ascertained, and that intention could not be reached without an explanation of the situation and nature of the property. 4 La.Ann. 443. [Emphasis supplied]'

* * * * * *
This general rule has been consistently applied in the later jurisprudence as is shown by Justice Hawthorn's well reasoned opinion in Walker v. Ferchaud, 210 La. 283, 26 So.2d 746, 747 (1946) where a contract to sell property described as `... 124 Stella Street, on grounds measuring about 60 X 150, as per title ...' was given effect, viz:
`We concede that the property which is the object of the contract is not sufficiently described in the written contract to identify it with certainty, but we think the district judge erred in sustaining the exception in this case, for the reason that on a trial of the case on its merits parol evidence is admissible for the purpose of making such identification.

It is true that parol evidence is not admissible against or beyond what is contained in the contract to purchase, nor is it admissible to show what may have been said before, or at the time of making it, or since. But this rule has no application to the admissibility of parol evidence to identify land not specifically described in an act of sale or contract to purchase or sell, for this court, as far back as 1848, in the case of Moore v. Hapton, 3 La.Ann. 192, stated the rule is such cases to be:
* * * * * *
"Under our rule, the evidence [parol evidence] is said to be against the act, when it is introduced to prove the falsity of what is therein stated. It is said to be beyond the act, if the object of it be to add to the act a clause which it does not contain, or to enlarge those which it does contain. But when titles to land contain no specific description of the property conveyed, as in this case, the question of ownership can only be determined by the application of the title to the land, and by parol evidence. * * *

In the case of New Orleans & Carrollton R. Co. v. Darms, 1887, 39 La.Ann. 766, 2 So. 230, 232, this court said: "We think * * * that the evidence fell within the familiar exception to the general rule which admits parol, in order to ascertain the nature and qualities of the subject-matter of the contract, e.g., to identify or define the extent of the premises leased or sold, when not sufficiently described in the written contracts * * *."'" [Emphasis supplied] At 279 So.2d 749, 764-765 (La.App. 1st Cir.1973)
Therefore, the trial judge should have allowed the parties to introduce parol evidence considering the peculiar facts of this case and noting the obvious ambiguity existing in the contract. The extent of Sloane's mineral interest in the Mecom lease is a genuine issue of material facts which cannot be resolved by simple reading of the contract. The trial judge concluded "the written language of the agreement uses the simple term `leases,'" thus preventing him from giving it a strained interpretation by limiting Sloane's royalty interest to only certain prospects located on property within the Mecom lease. We do not share the same "strain" in assigning reasonable meaning both to "leases" and "prospect" as used in this contract.
Accordingly, our appellate review of this matter must await the introduction of extrinsic evidence on remand, if offered and admissible, to fully determine the parties' intent regarding the "extent" of Sloane's mineral interest.

NULLITY LANGUAGE
Our decision reversing the judgment and remanding this case makes it unnecessary to review the last assignment of error. However, we note in passing that the judgment only nullifies a portion of the Trust Assignment to specifically exclude the exact *592 percentage of royalty interest granted to Sloane and his wife in the preceding paragraphs. This language is consistent with existing jurisprudence, and does not express an intent by the Court to void the entire Assignment as it relates to other rights conveyed.

DECREE
For the foregoing reasons, the case is remanded for further proceeding consistent with this decision. The appeal costs are assessed against appellees.
REVERSED AND REMANDED.
STOKER, J., concurs and assigns reasons.
THIBODEAUX, J., concurs in the result and joins in the concurrence of STOKER, J.
GUIDRY, J., dissents and assigns written reasons.
DOUCET, J., dissents for reasons assigned by GUIDRY, J.
STOKER, Judge, concurring.
I agree that this court should reverse the judgment of the trial court and remand the case for the introduction of extrinsic evidence to determine the intent of the parties concerning the extent of Sloane's overriding royalty interest. However, I base my opinion in this regard solely on the reasons which I will set forth in this concurring opinion.
It should be borne in mind that the motion now on appeal was granted on a motion for summary judgment and not on a trial on the merits. Therefore, the judgment is subject to all the standards governing summary judgments.
As noted in our 1981 opinion in this case, Sloane v. Davis, 397 So.2d 1376 (La.App. 3d Cir.1981), on joint motion of the parties, the trial court severed the issues of liability and damages and ordered that the question of damages, if any, be tried at a later date. In our 1981 decision, in which I concurred, we decided the liability in favor of Sloane and remanded the case to the trial court to try the issue of damages.
The liability phase of this case which was concluded in our 1981 decision settled the question of whether Sloane was entitled to any overriding royalty at all under his contract with Davis. We held that Sloane was entitled to something, but we did not reach the "damages" issue. That issue was referred back to the trial court to determine. The trial court's action on the "damages" issue is what is now before us in this appeal.
The "damages" issue is whether Sloane's base for his overriding royalty interest is the entire 27,000 acres covered by the Mecom lease or is confined to certain "prospects" which were "reviewed and interpreted" by Sloane as contemplated by the contract. Sloane wants the contract to be construed to mean that his override is calculated on the entire 27,000 acre lease, and the successor to Davis wants an interpretation which will confine the override to the "prospects" reviewed and interpreted by Sloane.
The question of ambiguity of the contract has figured in this case from the beginning. As noted in the majority opinion in our 1981 decision, 397 So.2d 1376 at page 1377, the trial judge thought the contract was ambiguous and permitted parol evidence to show the intent of the parties on the liability phase of the litigation. The majority opinion in our 1981 decision held there was no ambiguity in the contract concerning the provisions of the contract relating to what Sloane had to perform in order to be entitled to an overriding royalty interest, whatever the base or measure might be. The comments of the majority in our 1981 decision, to the effect that there was no ambiguity in the contract, can be read to relate only to what was before us on appeal at that time, namely, the liability issue. If this was not what the majority meant to say, then I think it went too far.
Unfortunately, the language of the majority opinion led the trial court to conclude when we remanded the case that the references to lack of ambiguity foreclosed hearing extrinsic evidence for the purpose of interpreting the intent of the parties in using the term "prospect". The trial court *593 gave oral reasons for judgment at the hearing on the motion for summary judgment and gave the following introductory remarks:
"THE COURT: This case was bifurcated, and the court originally heard the question of liability. I concluded then that the letter contract determining the liability issue was ambiguous, and I admitted parol evidence, found what I thought to be the intent of the parties, but later found that I was wrong, because the court of appeal said that the instrument was unambiguous and that the language of that agreement controlled. Now, after reviewing the instruments again and the arguments of counsel, the court feels that the finding of the court of appeal applies to the second phase of the case before me now, the quantum issue. Procedurally it is not a trial of the merits; it's before me on a motion for summary judgment. And, of course, the usual considerations are made before granting any kind of judgment in summary proceedings, and that is whether or not there are disputes of material facts."
The trial court then did all it could do and simply decided the matter on the basis of the contract without the benefit of parol evidence. In my opinion we should not consider whether the interpretation the trial court made is correct or not. I would clarify our 1981 opinion to make it clear that the language of that opinion concerning lack of ambiguity was intended to apply only to what was then before the court, namely, the liability issue. I concurred in the 1981 decision to the extent of finding Davis was liable to Sloane for something, but I objected to characterizing the contract as being unambiguous.
For the foregoing reasons, I concur in the remand of the case to the trial court for a trial on the merits for the purpose of determining the parties intent as to the extent of Sloane's overriding royalty interest. A trial on the merits will permit the parties to establish, if they can, what meaning "prospect" may have as a term of art in the oil and gas industry and just how the term "prospect" or "prospects" may relate to the term "lease" as used in the contract in question in this case.
GUIDRY, Judge, dissenting.
The appeal in this case is from our remand in Sloane v. Davis, 397 So.2d 1376 (La.App. 3rd Cir.1981).
In the first appeal of this matter, cited above, this court determined that an agreement between Sloane and Davis which provided Sloane with the option of acquiring an overriding royalty on a certain mineral lease was valid and free of ambiguity. The mineral lease involved in the controversy was one executed by the Mecom family in favor of the defendant, which lease covered some 27,000 acres. Pertinent provisions of the agreement provided as follows:
..., Davis hereby grants to employee [Sloane] the option of purchasing an overriding royalty on all oil, gas and mineral leases acquired by Davis as a result of employee's services or as a result of efforts of other members of the office wherein employee renders his services. Employee's cost of said overriding royalty shall be $10.00 per prospect.
... (2) On any prospect reviewed and interpreted by employee [Sloane], ... employee shall receive a ½ of 1% of 8/8ths overriding royalty interest. ...
In the initial appeal of this matter, this court determined that Sloane, while employed by Davis, did review and interpret the Mecom prospect within the meaning of the contract and that Davis acquired the Mecom lease as a result of plaintiff's services. We further held that Sloane did give timely notice of his intent to exercise the option granted to him by the agreement and was entitled to enforcement of the contract. Since on joint motion of counsel at the trial level the issue of liability and damages were severed, we ordered this matter remanded to the trial court for further proceedings in accordance with the stipulation of the parties for a bifurcated trial and in accordance with law and the views expressed.
*594 On remand, the learned trial judge held, in response to a motion for summary judgment filed by Sloane on the quantum issue, that the finding of this court on first appeal was decisive of the issue remaining for decision on remand, i.e., damages. In granting plaintiff's motion for summary judgment, the trial court stated:
... Procedurally it is not a trial of the merits; it's before me on a motion for summary judgment. And, of course, the usual considerations are made before granting any kind of judgment in summary proceedings, and that is whether or not there are disputes of material facts. But after reviewing the uncontroverted facts, the pertinent language of the agreement gives Mr. Sloan an option in the Mecom lease. Defense counsel points out that the contract between Davis and Mecom was not a standard lease and was drafted with unusual provisions and should not be treated as a lease. But it's referred to as a lease, and it obviously exhibits many of the characteristics of a lease, and it provides for oil, gas, and mineral exploration, as the standard leases usually do, so I can conclude that it would be covered by the term "lease" used in the agreement between Sloan and Davis. And since the written language of the agreement uses the simple term "lease", the court cannot give it a strained interpretation and conclude that it's limited to just prospects within the Mecom lease reviewed by Mr. Sloan. I must give it its plain meaning, and that means the entirety of the lease. So, for that reason, the court will grant the motion for summary judgment....
Accordingly, the trial court rendered judgment in favor of Sloane recognizing he and his wife as owners of a ½ of 1% overriding royalty under the Mecom lease.
Davis appealed urging that the trial court erred in applying the "law of the case doctrine" in determining the issue of "damages"; and, in rendering summary judgment on the issue of damages where the extent of the overriding royalty interest under the Mecom lease to which plaintiffs are entitled is in dispute in that such portion of the contract is ambiguous. In connection with the latter, appellant argues that plaintiffs are entitled to an overriding royalty interest only on the "prospects" within the Mecom lease, which were reviewed by him.
In the plurality opinion of the majority, the opinion author finds ambiguity in the agreement insofar as it pertains to the extent of plaintiff's earned interest in the Mecom lease. The opinion author finds ambiguity because, in her view, the agreement can be reasonably interpreted as providing an overriding royalty interest to Sloane only on the one or more "prospects" within the Mecom lease which Sloane reviewed and interpreted. Accordingly, finding ambiguity in the agreement, the opinion author proposes to reverse the judgment of the trial court and remand for the introduction of extrinsic evidence to determine the parties' intent regarding the extent of the overriding royalty interest earned by the plaintiff, Sloane. On the other hand, the concurring judges reverse on the simple basis that the majority went too far in our decision in 397 So.2d 1376, and since the court in that appeal did not have the "damages" issue before it, the expressions to the effect that there was no ambiguity in the contract should not have been imputed to the second phase of the case after remand.
I respectfully disagree. In this court's earlier opinion, we determined that Sloane did review and interpret the Mecom prospect and that Davis acquired the Mecom lease as a result of plaintiff's services. Considering this finding, which is now definitive and binding, and the law of the case insofar as we are concerned, the agreement clearly provides that Sloane is entitled to a ½ of 1% overriding royalty in the entire Mecom lease. Somehow the majority, in reversing the trial court's judgment, concludes that the defendant should have been allowed to introduce parol evidence to establish that the parties intended that Sloane would be entitled to an overriding royalty interest on only those "prospects" within the Mecom lease which he reviewed and interpreted. The learned trial judge *595 rejected this argument and, in doing so, in oral reasons stated:
... Since the written language of the agreement uses the simple term "lease", the court cannot give it a strained interpretation and include that it's limited to just prospects within the Mecom lease reviewed by Mr. Sloane. I must give it its plain meaning, and that means the entirety of the lease.
I fully agree with the trial court. The term "prospect" is a term of art used in the oil and gas industry to describe an area of interest. The term "prospect" may of course cover more than one lease. However, where, as in this case, only one lease is acquired which embraces a large tract of land, the terms "lease" and "prospect" are synonymous, in spite of the fact that the parties after review and interpretation conclude that such large tract may contain several intended developmental areas. In sum, I conclude that there is no indication in the agreement that the parties contemplated that Sloane would receive an overriding royalty interest only on the "prospects" within the Mecom lease which he reviewed and interpreted. The agreement is not ambiguous. I would affirm the trial court's decision.
For these reasons, I respectfully dissent.