642 So.2d 225 (1994)
Huey P. MORRIS, et ux, Plaintiffs-Appellees,
v.
PEOPLE'S BANK & TRUST CO. OF NATCHITOCHES, et al., Defendants-Appellants.
No. 93-934.
Court of Appeal of Louisiana, Third Circuit.
July 27, 1994.
Rehearing Denied October 11, 1994.
*226 Carl W. Cleveland, New Orleans, Mary Olive Pierson, Baton Rouge, for Huey P. Morris et ux.
Donald G. Kelly, Natchitoches, Billy Ray Pesnell, Shreveport, Jeffrey Howerton Thomas, Natchitoches, and Jay Alan Greenleaf, Shreveport, for People's Bank & Trust Co. of Natchitoches, et al.
Before GUIDRY, DOUCET and COOKS, JJ.
COOKS, Judge.
Huey P. Morris and his wife, Susie T. Morris, filed suit seeking specific performance and damages against People's Bank and Trust Company of Natchitoches, People's Bancshares, and certain directors alleging breach of contract, violations of Louisiana securities laws, negligent misrepresentation, and detrimental reliance.[1] He raised an additional cause of action against Sam Friedman alleging Friedman breached an oral agreement to purchase securities from him. He also asserted a legal malpractice claim against the attorney who drafted an employment contract between Morris and the People's Bank.[2] Defendants responded by filing *227 exceptions of no cause of action and a motion for summary judgment.
The trial judge granted summary judgment in favor of the attorney and Friedman, dismissing several claims asserted by Morris against them. He also dismissed the remaining claims against Friedman and the other defendants by sustaining their exceptions of no cause of action. Huey Morris appealed the lower court's ruling. We affirmed the trial court's judgment, except that portion which sustained the exceptions of no cause of action filed by People's Bank, Bancshares, and Sam J. Friedman. Remanding the case for further proceedings against these defendants, we held Morris' petition sufficiently stated a cause of action for detrimental reliance against the remaining defendants resulting from certain alleged prior dealings and oral promises. Morris v. People's Bank and Trust Company, 580 So.2d 1029 (La. App. 3d Cir.), writ denied, 588 So.2d 101 (La.1991) and the companion case captioned the same appearing at 580 So.2d 1037 (La. App. 3d Cir.1991).
Prior to trial, People's Bank was adjudged insolvent. The Federal Deposit Insurance Corporation (FDIC) was appointed as its receiver. A default judgment was entered in favor of Morris against the receiver of the Bank. Also, Bancshares, (People's Bank's holding company,) was dismissed as a party defendant.
On January 19, 1993, Morris' cause of action against Friedman for detrimental reliance was tried before a jury. Before deliberation, the trial judge specifically instructed the jury that Friedman was not a party to nor personally liable on the contract of employment executed between the People's Bank and Morris. This contract, the judge informed the jury, was signed by Friedman as an agent of the bank. To find Friedman liable, he cautioned the jurors, required a determination by them that he personally promised to repurchase Morris' stock.
The jury found that (1) Friedman personally and individually promised to purchase the bank stock shares owned or controlled by Morris before he acquired them; (2) Morris reasonably relied to his detriment upon Friedman's promise; and, (3) Morris sustained damages in the amount of $403,004.70.
Friedman timely filed this appeal and assigns the following errors for review:
"1. The District Court erred when, it allowed this case to be tried by a jury even though it was undisputed that the Morrises had not timely filed the jury deposit ordered by the Court.
2. The District Court erred in failing to require the jury to determine the essential issue of whether Friedman "knew or should have known" that any promise allegedly made by him to the Morrises would induce them to rely on it to their detriment.
3. The District Court erred in failing to instruct the jury on the legal principles applicable to a determination of whether the Morrises `reasonably relied; to their detriment on the promises allegedly made by Friedman.
4. The District Court erred in failing to require the jury to determine the issue of whether the Morrises were entitled to recover from Friedman the losses sustained by Robert W. Ray as a result of the stock purchased by him in the Bank.
5. The District Court erred in failing to instruct the jury of the law applicable to *228 the claims asserted by the Morrises against Friedman to recover the losses sustained by Robert W. Ray.
6. The District Court erred in permitting Lee `Dootsey' McNeely to testify, over Friedman's objection, to her personal opinion that Morris was a truthful and honest man.
7. The jury's verdict and the judgment entered by the District Court on the jury's verdict are manifestly erroneous.
8. The District Court erred in awarding the Morris' damages under Article 1967 for the `expenses incurred' or `damages suffered' by Robert W. Ray and Morris, Inc."

1. JURY DEPOSIT.
Louisiana Code of Civil Procedure article 1734.1 provides a court may order the party requesting a trial by jury to post a cash deposit in lieu of a bond. The District Court entered an order requiring that plaintiffs post a cash bond by 9:00 a.m. on the morning trial was scheduled to begin. The deposit was not posted until after the jurors were impaneled and sworn.
Friedman moved to strike the jury. The trial court denied his motion. Immediately, Friedman filed successive supervisory writs with this court and the Louisiana Supreme Court. Both applications were denied. Friedman assigns and reurges as error the trial court's denial of his motion to strike the jury. Friedman argues to allow Morris to post the required jury bond after commencement of trial defeats the purpose of Louisiana Code of Civil Procedure article 1734. He suggests if a party is dissatisfied with the composition of the jury, then that party could frustrate the entire jury selection process by refusing to deposit the bond; and, as a consequence, force dismissal of the jury.
Countering, Morris cites Wainwright v. Moreno's, Inc., 602 So.2d 734, 739 (La.App. 3d Cir.1992) and argues the earlier appellate writ denials constitute "law of the case". Thus, he contends, Friedman is barred procedurally from reurging this assigned error on appeal. Friedman asserts, on the contrary, the jurisprudence does not support appellees' position. He cites Goodwin v. Goodwin, 607 So.2d 8 (La.App. 2d Cir.1992) and notes the court in that case stated "a denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when appeal is taken from final judgment."
Law of the case is a procedural principle which relates to the conclusive effects of appellate rulings at trial on remand. It is intended to prevent appellate courts from reconsidering prior rulings of law on subsequent appeal in the same case. Sloane v. Davis, 619 So.2d 585 (La.App. 3d Cir.), writ denied, 629 So.2d 355 (La.1993). The law of the case principle, however, is purely discretionary in application. Sloane, supra.; Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). This Court has the power to review the assigned issue in the interest of justice; and, we elect to do so now.
The record discloses on the morning of trial, Morris requested that the clerk's office advise him of the amount required to satisfy the bond order. This information was not provided to him until after the jury selection process started. When advised of the amount needed, Morris promptly posted the bond.
Louisiana Civil Code of Procedure article 1734.1 provides in pertinent part: "When the case has been set for trial, the court may order, in lieu of the bond required in Article 1734, a deposit for costs, which shall be a specific cash amount, and the court shall fix the time for making the deposit, which time shall be within thirty days prior to trial." The article also provides "failure to post the cash deposit shall constitute a waiver of a trial by jury." Friedman contends this language is not permissive but mandatory in effect. Thus, he argues, Morris' failure to post the bond prior to commencement of trial automatically constituted a waiver of his right to jury trial. We disagree.
After carefully reviewing Callahan v. Anheuser-Busch, Inc., 535 So.2d 482 (La.App. 4th Cir.1988), writ denied, 540 So.2d 328 (La.1989) and Palumbo v. Phillips, 504 So.2d 629 (La.App. 4th Cir.1987) cited by Friedman *229 in brief, we find both cases are factually dissimilar from the present. In Callahan and Palumbo the trial judge ordered plaintiffs to post the requisite jury bond within thirty days following issuance of the order; and more than thirty days remained prior to commencement of trial. Plaintiffs neglected to timely file the bond prior to trial; and the courts correctly dismissed the juries. Their failure to timely post the jury bonds were unexplainable; and no attempt to comply with the order was made by them until after voir dire was conducted and the jury impaneled. The Courts noted:
"[i]f we were to allow applicants for jury trial to pay the jury cost after the jury is impaneled, they could simply refuse to pay the jury costs if they were dissatisfied with the jury and the jury would be dismissed. This would result in an unnecessary waste of time for the prospective members of the jury, the attorneys, and the courts."
Although Friedman correctly points out a party should not be allowed to frustrate the jury selection process by deliberately withholding payment of jury bonds, the record in this case simply does not evidence that Morris did not act with due diligence or that he deliberately failed to timely post the required bond in the event he was dissatisfied with the selected jury. The record shows the trial judge did not issue the order requiring Morris to tender the cash deposit until the Friday before trial started. Because Monday was a legal holiday, the judge directed Morris to advance the deposit by 9:00 a.m. on the morning of the trial. Morris appeared that morning ready to tender the amount required. For reasons, unattributable to him, the exact amount needed to secure the jury charges was not known by the clerk or court staff. Later that day, after the jury was impaneled, this information was provided to Morris; and, he promptly posted the cash bond.
We do not believe the trial judge's refusal to dismiss the jury under the circumstances undermines the purpose of Louisiana Code of Civil Procedure article 1734 or otherwise allowed Morris to "jury shop." To dismiss the jury in this case for administrative problems not attributable to Morris would defeat his statutory right to jury trial. As noted in Bergeron v. Anderson, 343 So.2d 1112 (La. App. 4th Cir., 1977).
"[a] party who has timely requested a jury trial and has otherwise complied with the statute must be afforded a reasonable time to post the bond. If Administrative problems exist, the problems must be confronted and resolved by court rule (which does not contravene the statutes that authorize jury trial) or by reasonable exercise by the trial judge of his inherent powers."
The order directing Morris to post a cash bond was not entered until three days before trial, well short of the thirty day period provided by statute for posting such bonds. Morris did not delay in complying with the order. He diligently made inquiry regarding the amount needed to satisfy the order; and he promptly complied on the first day of trial after receiving this information.
The trial court's decision not to dismiss the jury in this case does not contravene the spirit of the applicable provision which impliedly granted Morris a reasonable time to comply with the bond order. Bergeron, supra.

2. JURY INSTRUCTIONS.
Friedman assigns as instructional errors the trial judges' alleged failure to inform the jury that to cast him in judgment they had to find first he "knew or should have known" his promise to repurchase the stock would cause Morris to detrimentally rely on it; and second, Morris' reliance on the promise was reasonable. Friedman further contends the trial court improperly instructed the jury on the law applicable to the claim asserted by Morris against him for shares of stock listed in his step son's name. In opposition, Morris argues Friedman is prevented from assigning the alleged errors for review on appeal because he failed to articulate below the grounds for his objections as required by Louisiana Code of Civil Procedure article 1793(C) which provides:
"C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating *230 specifically the matter to which he objects and the grounds of his objection."
We agree ordinarily failure to fully comply with the requirements of this article results in a waiver of the right to assign such errors on appeal. However, the procedural facts in this case do not suggest Friedman knowingly waived the right to assign these errors on appeal or failed to voice any objection. When the jury retired, Friedman's counsel attempted to state specific grounds for objecting to various instructions given the jury by the trial judge. The judge interrupted him, however, saying "I don't think you have to put your reasons on." Friedman's failure to articulate the specific ground for his objection was excusable under the circumstances. Fabacher v. Laborde, McCauley & Wilson, 563 So.2d 1305, 1308 (La.App. 3d Cir.), writ denied, 569 So.2d 947 (La. 1990). Therefore, we will review the errors assigned.
In Bruce v. Rogers Oil Tool Services, Inc., 556 So.2d 922 (La.App. 3d Cir.1990), we said:
"It is well settled that the judge has a duty to give instructions to the jury which properly reflect the applicable law in light of the pleadings and facts in each particular case. Proper jury instructions are those which fairly and reasonably point up the issues presented by the pleadings and evidence and provide correct principles of law for the jury to apply to those issue. See Fuller v. U.S. Aircraft Ins. Group, 530 So.2d 1282 (La.App. 2 Cir.1988), writ denied, 534 So.2d 444 (La 1988), cert. denied, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989); Adams v. Security Ins. Co. of Hartford, 533 So.2d 140 (La.App. 1 Cir. 1988), affirmed in part and reversed in part, 543 So.2d 480 (La.1989). It is also the judge's responsibility to reduce the possibility of confusing the jury. Arnouville v. Joiner Enterprises, Inc., 423 So.2d 1246 (La.App. 5 Cir.1982), writ denied, 430 So.2d 76 (La 1983)."
"A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment, and the other party was reasonable in so relying.
* * * * * *
The question is not whether the promisor really intended to perform what he promised, rather it is whether the promise was made in such a manner that the promisor knew or should have known that the promisee would rely upon it, and, if so, whether the promisee has in fact reasonably relied upon the promise and been damaged thereby."
First, Friedman argues "the District Court failed to submit to the jury and to require the jury to determine whether [he] "knew or should have known" that Morris would rely on [his] alleged promisean element essential to any conclusion that [he] was liable to [Morris] on [his] claim for detrimental reliance under La.Civ.C. art. 1967." He asserts the trial judge should have required the jury to answer his proposed interrogatory number three which read: "If any such promise was in fact made, do you find from a preponderance of the evidence that defendant Sam J. Friedman could have reasonably foreseen at the time the promise was made that plaintiffs Huey P. Morris and Susie T. Morris would rely upon his alleged promise in purchasing any or all of the shares of stock acquired by them in Peoples Bank & Trust Company or Peoples Bancshares of Natchitoches, Inc.? Although the trial judge did not use the exact language and phraseology suggested in Friedman's interrogatory number three, his special interrogatory number two asks the jury: "In acquiring stock in People's Bank and Bancshares, did Huey Morris reasonably rely to his detriment on a promise or promises by Sam Friedman concerning the repurchase of Morris' stock when Morris left the bank? This interrogatory fairly presented the question to the jury for consideration and answer. His failure to specifically require the jury to answer whether Friedman knew or should have known his promise would cause Morris to rely on it to his detriment was not fatal. As noted, the trial judge's instruction on the issue of detrimental reliance was extensive. On numerous occasions, he informed the jurors they could find Friedman liable only if he "knew or should have known" that Morris would rely on his personal promise; and, Morris reasonably relied on it. The trial *231 judge was not required to submit written interrogatories on every issue presented. Loraso v. Albritton, 354 So.2d 230 (La.App. 4th Cir., 1978). Moreover, the record as a whole reflects the trial judge's failure to submit Friedman's interrogatory number three was not prejudicial. We also find the trial judge's rejection of Friedman's proposed special instruction on this issue was not error. The jurors were fully and specifically apprised of the applicable law and factual questions they were required to resolve before finding Friedman liable. Friedman also complains the trial judge erroneously refused to grant his requested interrogatory on the issue of his liability to Morris for losses sustained by his stepson. Friedman's proposed interrogatory number 6 asked:
"Do you find from a preponderance of the evidence that the shares of stock standing in the name of Robert A. Ray are in truth and fact owned by Robert A. Ray and that Huey P. Morris was the agent and attorney in fact of Robert A. Ray in connection with the purchase and/or disposition of such shares of stock? Answer "yes" or "no."
Apparently, Friedman contends Morris could not recover losses on stocks registered in the name of his stepson without serving as an agent or attorney in fact for him. The judge instructed the jury that Morris could recover for losses associated with shares of stock owned or controlled by him. The word "controlled" put the jury on notice that Morris could recover only if he controlled the stocks issued in the name of his stepson. The record shows all the shares of stock purchased, including those registered in the stepson's name, were purchased by Morris. The trial judge's instruction was adequate and his failure to submit Friedman's proposed interrogatory six to the jury was not an abuse of discretion.

3. ADMISSIBILITY OF LEE McNEELY'S TESTIMONY.
Friedman contends the trial court erred in allowing Lee "Dootsey" McNeely to testify that in her personal opinion "Mr. Morris [was] a terribly honest man, almost to a fault ..." In response to Friedman's objection to "personal opinion" testimony regarding Morris' truthfulness, the following exchange appears in the record:
"Mr. Kelly: That isn't sufficient. The only way that you can prove the reputation of anyone is not ... it is not the opinion of the witness who is testifying. He would first have to lay a proper foundation as to whether or not she has discussed this with other people, whether she has ever heard his reputation for truthfulness and veracity discussed in the community. And if she says, yes, I've heard that. She cannot give a personal opinion.
The Court: A foundation must first be established that the character witness is familiar with the reputation of the witness' credibility as an issue. The character witness shall not express his personal opinion as to character of the witness whose credibility is an issue.
Mr. Kelly: I'm just going back....
The Court: All right. The ruling is that she can testify about his character, based on the fact that Mr. Thomas has put letters before the jury to the effect that Mr. Morris has misled federal bank regulators, and they should have the right to rebut that testimony. All right, let the objection be noted and overruled. And you may bring the jury back in.
When asked whether she was familiar with Morris' reputation for "character and honesty," "Dootsey" admitted she did not know him prior to his association with the bank; but, she to blurted out "I found Mr. Morris to be a terribly honest man, almost to a fault... when he told you something ..." Immediately, the trial judge interrupted her; and ruled:
"This I cannot ... This I must sustain the objection to, because the character witness shall not express his personal opinion as to the character of the witness."
We must decide, first, whether the trial judge's initial ruling was erroneous; and, second, whether the error harmed or prejudiced Friedman's defense. American Mfgrs. Mut. Ins. v. GMC, 582 So.2d 934 (La.App. 2d Cir.1991). The error must have "a substantial effect on the outcome of the case." Neumeyer v. Terral, 478 So.2d 1281 (La.App. 5th *232 Cir.1985), writ denied, 481 So.2d 631 (La. 1986). Absent prejudice, reversal is not warranted.
The exchange between Friedman's attorney and the Court clearly shows the trial judge's ruling on the admissibility of the character evidence was restrictive. His ruling that "Dootsey" could testify regarding Morris' character was prefaced by his acknowledgement that she could not express her personal opinion on this subject; but, she could testify if she was "familiar with the reputation of the witness' credibility." Though awkwardly phrased, the trial judge's ruling was not wrong. Realizing later that "Dootsie's" testimony on this issue was based solely on personal opinion, he quickly reacted and sustained the defense's earlier objection. Also, "Dootsie's" statement (standing alone) did not substantially impact the outcome of the case, particularly considering several witnesses testified (without objection by the defense) that Morris was generally known in the community as an honest and truthful person.

4. MERITS OF DETRIMENTAL RELIANCE CLAIM.
Next, Friedman contends the jury manifestly erred in concluding Morris proved, by a preponderance of the evidence, each element required to establish a claim based on detrimental reliance.
Friedman controlled seventy percent of People's Bank stock. Morris testified, as its representative and majority shareholder, Friedman negotiated a contract of employment hiring him as President of the Bank and further obligated the bank to purchase unconditionally all shares of stock owned or controlled by him in the bank or its holding company at the time of his resignation as president. Additionally, Morris maintained Friedman personally promised, if the bank failed to honor the contract as written, he would buy the stock still owned and controlled by him. In any event, according to Morris, Friedman promised the stock would be repurchased by either him or the bank. Friedman did not deny he entered "buy back" agreements with several directors' and employees of the bank in the past personally obligating himself to repurchase shares of stock. But, he insisted when contracting with Morris he acted solely as an agent of the bank; and, he did not promise to bind himself personally to buy the stock from Morris. Friedman acknowledged though he expressed interest in personally acquiring Morris' stock; but this interest, he asserted, was not communicated until after Morris announced intent to resign as president of the bank. Several witnesses also testified, without objection, that Morris told them Friedman agreed personally to buy back all stock owned or controlled by him when he left the bank. This evidence, Friedman contends, was insufficient to prove the essential elements of a claim for detrimental reliance.
The doctrine of detrimental reliance was first codified in Louisiana in 1985 by enactment of Louisiana Civil Code article 1967 which provides:
"Cause defined; detrimental reliance. Cause is the reason why a party obligates himself. A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable."
In our earlier decision in this case, we said: "La.C.C. art. 1967 does not require the existence of a formal, valid, or enforceable contract in order for detrimental reliance to occur." Morris v. People's Bank & Trust Co., 580 So.2d 1029, at 1036 (La.App. 3d Cir.1991). Quoting from A Student Symposium, 45 La.L.Rev. at 765-766, we stated:
"[T]he basis of detrimental reliance is not the intent to be bound, since detrimental reliance is not really contractual in nature. It is based on the idea that a person should not harm another person by making promises that he will not keep. The question is not whether the promisor really intended to perform what he promised, rather it is whether the promise was made in such a manner that the promisor knew or should *233 have known that the promisee would rely upon it, and if so, whether the promisee has in fact reasonably relied upon the promise and been damaged thereby. When the promisee can prove all of these elements he has shown that the promisor has dealt him an injustice, and the court should be free to remedy the injustice suffered by the promisee."
Whether a promise was made by Friedman which he knew or should have known would cause Morris to rely on it and whether Morris reasonably did so are all questions of fact. An appellate court may not set aside a jury's finding of fact absent manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where two permissible views of the evidence exist, the jury's choice between them is never clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

A.

Existence of Promise and Foreseeability of Reliance
The jurors obviously accepted Morris' version of the representations made by Friedman. Morris testified repeatedly that Friedman stated "he wanted the stock back" and indicated he would buy the shares of stock himself or instruct the bank to buy them. Friedman's added assurance to personally repurchase the stock, the jury found, was a separate promise distinct from that made in the employment contract; and Friedman either knew or should have known such promise would cause Morris to rely on it to his detriment.
Even if Morris' testimony alone could suffice to prove the existence of a "promise" as alleged by a preponderance of evidence, Friedman argues Louisiana Civil Code article 1846 requires that the promise must be corroborated. Though several witnesses recalled what Morris' related to them regarding the promise, Friedman contends their testimony does not suffice to corroborate Morris' "self-serving" account because these witnesses did not have "personal knowledge" of the conversations between he and Morris.
Louisiana Civil Code Article 1846 provides:
"When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence. If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances."
To recover based on the theory of detrimental reliance, as found in Louisiana Civil Code article 1967, plaintiff need not prove the existence of a promise or a valid contract. The Codal provision cited by Friedman clearly applies to "contracts." The "corroborating circumstances" requirement mentioned in this provision does not apply to causes of action based on detrimental reliance. Neither are we persuaded, as argued by Friedman, that the Statute of Frauds, as contained in LSA-R.S. 10:8-319, prevents recognition of Morris' claim based on Friedman's alleged "oral" promise. This statutory provision, like Louisiana Civil Code article 1967, regulates the enforceability of contracts. As we stated in our earlier opinion in this case, Friedman's representation, though sufficient to support or prove a cause of action for detrimental reliance, does not establish the existence of a contract. Morris v. People's Bank & Trust Co., 580 So.2d 1037 (La.App. 3d Cir.1991).
Friedman says even if he made a promise to Morris which might give rise to a cause of action for detrimental reliance, he could not have foreseen that Morris would rely upon his "preliminary representations" rather than the employment contract later perfected between he and the bank. This contract, Friedman contends, superseded the earlier promise allegedly made by him; and, his offer was withdrawn when Morris agreed to sell any stock owned by him to the Bank upon the termination of his employment as provided in the contract. The jury obviously found the contrary existed. Morris testified Friedman continued even after his employment to assure him that he would repurchase the stock. We cannot say the jury manifestly erred in factually concluding Friedman's promise was not revoked; and, Friedman should have known Morris would rely on it.

*234 B.

Reasonable Reliance
Still Friedman contends the jury could not have found Morris' reliance on his alleged oral promise to repurchase the stock was reasonable because Morris was obligated by contract to sell the same stock to the bank at the time of his resignation.[3] This apparent conflict, Friedman argues, at least placed a duty on Morris to investigate further before relying on his promise to repurchase the stock. We have reviewed Trifiro v. New York Life Ins. Co., 845 F.2d 30 (1st Cir.1988) cited by Friedman; and, find the facts in that case are distinguishable from the present. The conflict which Friedman suggests exists in this case is neither apparent nor real in fact. Morris testified it was his understanding if the bank did not repurchase the stock, Friedman would do so personally. Friedman, as majority shareholder of the bank, retained authority to purchase Morris' stock personally or on behalf of the bank as provided by the contract. Friedman could not avail himself of both options at the same time to avoid repurchasing Morris' stock.

5. INTEREST.
Answering the appeal, Morris urges the trial court erred in only awarding him interest from the date of judgment rather than the date of judicial demand at the latest. We agree. Relying on Stokes v. Georgia-Pacific Corp., 894 F.2d 764 (5th Cir.1990), the trial court reasoned Louisiana law only allows interest from the date of judgment based on a detrimental reliance claim because the "debt is not ascertainable" except by court award. Stokes, however, was decided by the United States Fifth Circuit Court of Appeal one year before the Louisiana Supreme Court squarely addressed the issue in Trans-Global Alloy & First Nat. Bank, 583 So.2d 443 (La.1991). Under civil law doctrine, as noted by the Supreme Court, "damages are viewed as reparation for the loss suffered by the creditor, and not as a penalty imposed on the debtor" as understood in common law. Our civilian and the modern understanding of interest are in accord with viewing interest as "compensation allowed by law or fixed by parties for the use or detention of money, or allowed by law as additional damages for loss of use of the money due as damages, during the lapse of time since the accrual of the claim." C. McCormick, supra, at § 50. Thus, the fact that the damages are unliquidated and unascertainable before trial will not bar an award for prejudgment interest in Louisiana. It matters not that Morris' claim for detrimental reliance was not fixed or determinable before trial. He is legally entitled to judgment casting interest on the damages awarded by the jury from date of judicial demand.

DECREE
For the foregoing reasons, the judgment rendered below is affirmed, except that portion which awards Morris interest from the date of judgment. The judgment is hereby amended to cast interest from the date of judicial demand until paid. All costs on appeal are assessed to appellant.
AFFIRMED AS AMENDED.
NOTES
[1] For ease of presentation, we shall refer to Mr. and Mrs. Morris singularly as "Morris."
[2] In pertinent part the employment contract stated:

"(a) Employee recognizes and agrees that, by virtue of the employment granted under this Agreement, he will have and will be offered numerous opportunities to acquire shares of stock in the Bank or Holding Company which controls the Bank. Upon the effective date of this Agreement, the Employee owns no shares of stock in the Bank, and there is presently no Holding Company in control of the Bank. Upon the termination or expiration of this Agreement, for any reason whatsoever, the Employee shall be obligated to sell to the Bank or its designee all shares of stock in the Bank or in any Holding Company which controls the Bank, which the Employee shall hold or control, directly or indirectly, at a price equal to the average per share price of the three (3) immediately preceding bona fide sales registered upon the stock transfer books of the Bank, or the Holding Company, or at a price equal to the purchase price paid by Employee plus any increase in book value of that purchase during the term of this agreement whichever is greater, and the Employee shall not be free to sell or transfer such shares to any third party unless the Bank or its designee shall fail to purchase the same within a period of sixty (60) days after the termination of this Agreement. However, the Bank shall be unconditionally obligated to purchase the stock in accordance with this paragraph.
(b) Employee's spouse, Susie T. Morris, enters into this Agreement solely for the purpose of binding herself to the provisions of the aforesaid paragraph, and to agree that she will in consideration of the employment herein secured by her spouse, transfer to the Bank or its designee, all the right, title and interest she may have under the laws of the State of Louisiana in and to all shares of stock in the Bank or the Holding Company, pursuant to the afore said paragraph, in the event of termination or expiration of this Agreement for any cause whatsoever.
(c) Employee represents and warrants to the Bank that: (i) Employee is under no contractual or other restriction or obligation compliance with which is inconsistent with the execution of this Agreement, the performance of obligations hereunder or the rights of the Bank hereunder; and (ii) Employee is under no physical or mental disability that would hinder the full performance of his obligations under this Agreement."
[3] The arguments advanced and additional cases referenced by Friedman in later letters forwarded to this court were not accompanied by orders requesting leave to supplement his original and reply briefs. We, therefore, did not consider these submissions which were not filed in compliance with this Court's rules.