297 So.2d 498 (1974)
A. J. MODISETTE, Plaintiff-Appellee,
v.
AMERICAN INTEGRITY INSURANCE COMPANY, Defendant-Appellant.
No. 12332.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1974.
Meadors & Meadors by William F. M. Meadors, Jr., Homer, for defendant-appellant.
Paul A. Newell, Haynesville, for plaintiff-appellee.
Before AYRES, HALL and WILLIAMS, JJ.
HALL, Judge.
Plaintiff, A. J. Modisette, filed suit against defendant, American Integrity Insurance Company, seeking to have a health and accident insurance policy issued to him by the defendant company, declared to be in full force and effect and seeking to recover damages for wrongful cancellation of the policy by defendant. The insurance company defended on the basis that the policy lapsed under its own terms because plaintiff failed to timely pay the monthly premium when due or within the ten day grace period provided by the policy. After trial, in a written opinion, the district court held plaintiff proved timely payment of the premium and that defendant acted in a bad faith effort to be freed from its contractual obligations to plaintiff. Judgment was rendered recognizing the policy to be in full force and effect and awarding plaintiff damages in the amount of $500 for embarrassment, anguish, consternation and inconvenience. Defendant appealed.
Defendant specifies that the district court erred (1) in finding that plaintiff proved timely tender and payment of the August 21, 1970 premium; (2) in finding that defendant acted in bad faith; and (3) in allowing $500 in damages.
The evidence consists of the testimony of plaintiff and his wife, the testimony of *499 defendant's administrative vice president and certain documentary evidence.
On January 21, 1967, defendant issued a health and accident policy to plaintiff. The policy provided for a monthly renewal premium of $5, due on the twenty-first day of each month, with a grace period of ten days. A home recuperation benefit rider was added to the policy for an additional premium of $2 per month, making a total monthly premium of $7. The policy is "NON-CANCELLABLE AND GUARANTEED RENEWABLE FOR LIFE" at the policyholder's option, unless there is a failure to pay premiums timely, in which event the policy automatically lapses subject to reinstatement at the option of the insurance company.
Conspicuously on the back of the policy are "IMPORTANT" instructions, including:
"PAY PREMIUMS PROMPTLY upon receipt of notice so that your Policy will remain in force."
The notice referred to was regularly transmitted to each policyholder in card form approximately ten days prior to a premium due date. The form contains the following instructions:
"IMPORTANT: YOU MUST RETURN THIS CARD WITH PAYMENT TO RECEIVE PROPER CREDIT."
The premium notice card was regularly mailed to plaintiff who timely returned the cards with payment of monthly premiums from the time the policy was issued for more than three years until August 21, 1970.
Plaintiff and his wife testified they customarily awaited receipt of the notice for return with their monthly premium but that the notice for the premium due August 21, 1970 was never received. Nevertheless, on August 19, 1970, they mailed a check in payment of the $7 premium in a properly stamped and addressed envelope to the defendant. Their testimony is corroborated by the stubs in their checkbook, the receipt by creditors of other checks written and mailed on the same date evidenced by canceled checks, and a handwritten memorandum made the night the checks were written reflecting Mrs. Modisette's efforts to balance the checking account and showing the check to defendant as one of the checks written that night.
The evidence reflects that when a premium payment was not received by the company, the company regularly and automatically, about ten days after the due date, mailed a "friendly reminder" notice to the policyholder calling attention to the nonpayment of premium. Plaintiff and his wife testified no such card was received by them after August 21.
Plaintiff also did not receive a premium notice card ten days in advance for the premium due September 21, and did not get his canceled check back with his bank statement. Thereupon, on advice of counsel, plaintiff purchased a money order for $14 on September 15, and mailed it to the insurance company to cover the August 21 and September 21 premiums, in the event the insurance company for some reason had not received the August 21 premium payment. The defendant insurance company, on September 24, returned the money order and advised plaintiff the policy had lapsed and that the company was exercising its option to refuse reinstatement of the policy on the basis of plaintiff's "health history".
The evidence further reflects that prior to August 21, 1970, plaintiff had been paid almost $2,000 in claims under the policy, that it had been necessary for plaintiff to employ an attorney to effect collection of benefits and in one instance it was necessary to file suit, and that at the time the payment in dispute became due there was pending a claim by plaintiff for approximately $1,150 in benefits which the company was resisting, but which was ultimately paid about the same time plaintiff was advised the policy had lapsed.
*500 The only evidence offered by defendant as to nonpayment of the premium was the testimony of its vice president who testified that the company's records did not reflect receipt of the premium payment. The officer offered no explanation of why the premium notice or past due notice was not sent to plaintiff on this occasion, but he assumed they were mailed because he believed the company's computer system to be error free.
The district court believed the testimony of plaintiff and his wife and we are in accord with this finding. Their testimony was corroborated in the respects noted above and was not refuted by any direct or reliable evidence presented on behalf of defendant.
The district court further found that the defendant insurance company made a bad faith effort to get out of its obligations to plaintiff under the policy. Although the company's officer testified that ordinarily there is no connection between the premium payment procedure and the claims procedure, the district court found it incredulous that the billing department would not know of the previous and pending claims of approximately $3,000 in connection with this policy on which premiums of only about $200 had been collected. Accepting the truth of the plaintiff's testimony that the premium notice and follow-up notice were not mailed to him, this failure on the part of the company is unexplained and from the officer's testimony explaining the company's error-free computer procedure, the inference can be drawn that the failure was deliberate. None of the company personnel directly handling the matters involved in this case were called to testify. There is sufficient evidence of motive, opportunity and irregular procedure to justify the district court's finding of bad faith on the part of the defendant.
Under LSA-Civil Code Art. 1934, the finding of bad faith breach of contract supports the rather nominal award of $500 made for inconvenience, anguish and the like resulting from the actions of the defendant.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.