Sidney STOKES, Plaintiff–Appellee Cross–Appellant,

v.

GEORGIA–PACIFIC CORPORATION, Defendant–Appellant Cross–Appellee.

No. 89–4403.

United States Court of Appeals, Fifth Circuit.

Feb. 22, 1990.

Rehearing Denied March 14, 1990.

W. Craig Henry, Hudson, Potts & Bernstein, Monroe, La., Richard E. Griffin, Griffin, Rainwater & Draper, Crossett, Ark., for defendant-appellant cross-appellee.

J. Michael Hart, Theus, Grisham, Davis & Leigh, Monroe, La., for plaintiff-appellee cross-appellant.

Before HIGGINBOTHAM, SMITH and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

In this Louisiana detrimental reliance diversity action, Georgia–Pacific appeals the district court's ruling on the admissibility of parol evidence and the court's denial of its motions for directed verdict, judgment notwithstanding the verdict, and new trial. Georgia–Pacific also objects to the trial court's rejection of Georgia–Pacific's contention that the claim had prescribed. Stokes answers and cross-appeals, objecting to the court's award of interest from the date of judgment rather than from judicial demand. We affirm the district court's rulings on all counts.

Facts

Sidney Stokes began wood chipping for defendant-appellant Georgia–Pacific in 1983. Wood chipping is the process by which trees are cut, chipped, and hauled, in this case, to the Georgia–Pacific plant in Crossett, Arkansas for burning as fuel. Stokes operated under successive 30–day contracts, based upon Georgia–Pacific's fiscal month. The contracts were of two types: one was used when Stokes chipped on land not owned by Georgia–Pacific, and the other was used when Stokes chipped on Georgia–Pacific land. Both types contained merger clauses and set forth the volume of chips to be delivered, the price per ton, and the time period involved.

From 1983 to 1985 Stokes owned and operated a small capacity chipper ("the little chipper"). In 1985 Georgia–Pacific built a bigger boiler for its Crossett plant, and early that year Stokes spoke to Georgia–Pacific officials about acquiring a second, larger chipper ("the big chipper") to meet the increased demand for chips. This discussion did not culminate in any agreement. However, later in February 1985 Georgia–Pacific representatives sent word to Stokes, while he was chipping in the woods, that they now wanted to discuss his proposal to acquire the big chipper. Accordingly, Stokes went to the Crossett plant and spoke to Mr. Kleinhofs, Mr. Stagg, and Mr. Gilbert, Georgia–Pacific employees, about the proposed acquisition.

This suit arises out of that conversation. Stokes testified that he informed the Georgia–Pacific representatives that he would need a long-term contract before he could purchase the big chipper. He further testified that he specifically discussed with Kleinhofs that he would need to work for a period of five years and to haul, with both chippers, approximately 3,000 tons of chips per week in good weather and 2,500 tons in bad weather. According to Stokes' testimony, the parties discussed a price of $16.00 per ton. Stokes left the meeting with the impression that Georgia–Pacific agreed to the terms discussed because Kleinhofs asserted that it "should be no problem" to fulfill his request.

Georgia–Pacific disputes the essential aspects of Stokes' testimony. Georgia–Pacific employee Kleinhofs testified that, when Stokes mentioned his need for a long term contract, Kleinhofs told Stokes: "That we operated on a fiscal month, and that as long as he performed satisfactory, which I expected he would since he had for two years, and as long as we could agree to a price, and we needed his production, there is no reason why we couldn't continue like we had in the past." Georgia–Pacific denies having made any promises whatsoever to Stokes during their February meeting.

Stokes subsequently purchased the big chipper and related equipment for approximately 1.5 million dollars. Although Stokes had financing for the purchase, at the suggestion of his banker Stokes enlisted Georgia–Pacific to guarantee $250,000 of the debt. In conjunction with the guaranty, the parties executed an agreement providing that Georgia–Pacific would deduct weekly payments from Stokes' wood-chipping operation and remit such payments to the bank holding Stokes' loan.

Following the February conversation regarding Stokes' purchase of the big chipper and the execution of the guaranty, the parties continued to execute the 30–day agreements. In 1986 Stokes sold the little chipper to a Mr. Miller. Stokes testified that prior to this sale he, Miller, and Kleinhofs met at the Crossett plant to discuss a division of Stokes' quota, resulting in an allotment of 1,200 tons per week to Miller and 1,800 tons per week to Stokes. He points

to this division as evidence supporting his assertion that, during their February 1985 conversation, Georgia–Pacific assured him 3,000 tons per week for the combined output of the big and little chippers.

With the decline in natural gas prices in late 1986, Georgia–Pacific began to rely on gas as fuel and reduced the tonnage and price of wood chips to be provided by Stokes. Left without work sufficient to pay for the equipment he had purchased, Stokes filed suit in January 1987.

Stokes brought suit in Louisiana state court, alleging that Georgia–Pacific breached the oral contract. He subsequently amended his complaint to allege a theory of recovery under detrimental reliance. Georgia–Pacific removed the suit to the Western District of Louisiana on the basis of diversity jurisdiction. After a trial on the liability issue only, limited to the detrimental reliance cause of action, the jury found in favor of Stokes. After trial on the issue of damages, the jury returned a verdict in favor of Stokes for $1,520,000.00. The trial court awarded interest from the date of judgment and denied Georgia–Pacific's motions for JNOV, new trial, and remittitur.

Parol Evidence

Throughout trial and on appeal Georgia–Pacific has argued that the 30–day contracts represented the complete agreement between the parties and thus that parol evidence should not have been admitted to vary the terms of those contracts. Georgia–Pacific requests that this court review three rulings: the trial court's decision to admit the parol evidence, the trial court's denial of Georgia–Pacific's motion for directed verdict, and the trial court's denial of Georgia–Pacific's motion for judgment notwithstanding the verdict.

■ A trial judge's ruling on the admissibility of evidence is generally reviewed for an abuse of discretion. *Jon–T Chemicals, Inc. v. Freeport Chemical Co.,* 704 F.2d 1412, 1417 (5th Cir.1983). However, where, as here, the admissibility determination necessarily involves a substantive legal decision there exists a two-tiered review process. The Court must first review de novo the validity of the underlying

legal analysis. Once the Court has evaluated the propriety of the district court's substantive analysis upon which the evidentiary ruling is based, it then reviews the evidentiary ruling under the abuse of discretion standard. *See United States v. Robinson,* 700 F.2d 205, 210 (5th Cir.1983), *cert. denied,* 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984); *United States v. Beechum,* 582 F.2d 898, 909–18 (5th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

■ The trial court's rulings on Georgia–Pacific's motions for directed verdict and for judgment notwithstanding the verdict are reviewed under the abuse of discretion standard. *Ellis v. Chevron U.S.A. Inc.,* 650 F.2d 94, 96–97 (5th Cir.1981). The court should consider the entirety of the evidence, and there must be substantial evidence opposed to the motions in order for the case to be submitted to the jury. *Boeing Company v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). *See also, Melear v. Spears,* 862 F.2d 1177, 1182 (5th Cir.1989).

■ Georgia–Pacific contends that all evidence of the February conversation should have been excluded as violative of La.Civ. Code art. 1848, which provides in pertinent part that "[t]estimonial or other evidence may not be admitted to negate or vary the contents of an ... act under private signature." Georgia–Pacific argues that the consecutive 30–day agreements entered into every month after the February discussion embody the entire agreement between the parties and preclude admission of any parol evidence because evidence of an antecedent oral agreement cannot be introduced to vary or modify a clear and unambiguous subsequent written agreement concerning the same subject matter. Given its premise that the parol evidence rule applies, Georgia–Pacific then argues that detrimental reliance should not be an exception to the parol evidence rule; i.e., oral discussions should not be admissible for the purpose of proving detrimental reliance where such evidence would for other

purposes be precluded by the parol evidence rule.

We find, however, that the parol evidence rule is not implicated here because it is clear that the 30–day contracts did not encompass the entire agreement between the parties. The monthly contracts made no provision allowing for deduction of payments to the bank and contained no renewal clauses. The 30–day contracts merely regulated the volume and movement of chips.

■■■ Between the parties to an instrument, parol evidence is admissible to show that the writing is only part of an entire oral contract. *Scafidi v. Johnson*, 420 So.2d 1113, 1115 (La.1982). Parol evidence is admissible to prove a non-integrated side-agreement. *Gammon Enterprises, Inc. v. Vanguard Investment, Inc.*, 449 So.2d 1077 (La.App. 4th Cir.), *writ denied*, 456 So.2d 1390 (La.1984). Evidence of prior agreements leading up to a written contract are inadmissible to vary the terms of the contract only if the parties have stated the terms of the contract in the form of a complete written integration and if the written agreement is a complete and accurate statement of all the terms agreed upon by the parties. *Kirsch v. Pier Orleans, Inc.*, 362 So.2d 1182, 1184 (La.App. 4th Cir.1978). In *Kirsch* the court held that parol evidence was admissible to show that the parties did not intend to substitute one written contract for all of their prior negotiations and agreements and that the written agreement was not assented to as a complete integration.

Because the 30–day contracts did not embody the entire agreement between Stokes and Georgia–Pacific, the trial judge did not abuse his discretion in admitting parol evidence. Georgia–Pacific's motions for directed verdict and for judgment notwithstanding the verdict were premised on the conclusion that the parol evidence was improperly admitted and that, without such evidence, the jury could not find in Stokes' favor. Because the parol evidence was properly admitted, the district judge did not abuse his discretion in denying Georgia–Pacific's motions; there was sufficient evidence for the case to be submitted to the jury.

New Trial

■■■ Georgia–Pacific next objects to the district court's refusal to grant a new trial. A trial judge's ruling on a motion for a new trial is reviewed for an abuse of discretion. This standard of review is somewhat narrower when a new trial is denied and somewhat broader when a new trial is granted. *Jones v. Wal–Mart, Inc.*, 870 F.2d 982, 986 (5th Cir.1989). All the evidence must be viewed in a light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]." *Jones* at 987, *citing Whatley v. Armstrong World Industries, Inc.*, 861 F.2d 837, 839 (5th Cir.1988), *quoting Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969).

Louisiana Civil Code article 1967, in pertinent part, provides:

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

In order to recover for detrimental reliance the plaintiff must prove that the defendant made a representation by conduct or word, that the reliance on the representation was justified, that the defendant knew or should have known that plaintiff would rely on the representation, and that the plaintiff changed his position to his detriment because of his reliance on the representation. *Breaux v. Schlumberger Offshore Services*, 817 F.2d 1226, 1230–31 (5th Cir.1987).

Georgia–Pacific makes a four-pronged attack on the trial court's refusal to grant its motion for a new trial. It objects to the jury's findings as to 1) the existence of an

enforceable promise; 2) Georgia–Pacific's knowledge of Stokes' reliance; 3) the reasonability of that reliance; and 4) the amount of the damages award.

 Georgia–Pacific first argues that the jury's finding of an enforceable promise is against the great weight of evidence. However, it is precisely because the promise is not enforceable as a conventional obligation that the cause of action exists:

> The question may be raised whether detrimental reliance is a true cause for an obligation since neither the promissee's reliance nor his detriment seems to originate in the promisor's intent. The answer is that, though the promisee's detrimental reliance is certainly not a motive of the promisor, it is, however, a reason why he should be bound.

Litvinoff, *Still Another Look at Cause*, 48 La.L.Rev. 3, 28 (1987) (citation omitted). Consequently, given the standard articulation of this requirement, there is evidence to support the jury's determination that Georgia–Pacific made a representation to Stokes. The same evidence supports the jury's findings regarding Georgia–Pacific's knowledge of Stokes' reliance and the reasonableness of that reliance. Thus Georgia–Pacific's first three new trial arguments may be discussed together.

Stokes testified that Georgia–Pacific employees summoned him in from the woods to discuss his purchase of the big chipper. They indicated that their newly built boiler would require a larger volume of chips. In response to Stokes' concerns about a long-term, higher volume contract, Kleinhofs assured him that "there would be no problem." If Stokes had any doubts about Georgia–Pacific's intentions, they were laid to rest when it executed a guaranty to secure part of the debt he incurred in purchasing the big chipper. Georgia–Pacific agreed to withhold Stokes' mortgage payments on the big chipper from his paycheck and presented to the bank a written schedule detailing the method and amount of payment. Georgia–Pacific is not a "fly-by-night" company; this fact gave Stokes confidence in the transaction with Georgia–Pacific. *See Breaux*, 817 F.2d at 1230–31.

Georgia–Pacific points to the fact that Stokes' version of the February conversation was not confirmed by the testimony of Georgia–Pacific employees party to that conversation. It asserts that the 30–day contracts the parties subsequently entered into belie the existence of the alleged representation. Georgia–Pacific further argues that Stokes' actual production, which ranged from 567 to 3690 tons per week, similarly belies the existence of the promise.

Given the conflicting inferences that can be drawn from this evidence, it cannot be said that the evidence is so overwhelmingly in Georgia–Pacific's favor that the jury verdict should be disregarded. It was certainly the jury's prerogative to give credence to Stokes' testimony regarding the February conversation. The trial court did not abuse its discretion by denying Georgia–Pacific's motion for a new trial on these grounds.

 Georgia–Pacific further argues that the trial court erred in denying its motion for a new trial on damages. It contends that the jury's award is against the great weight of evidence and is clearly excessive. However, where a jury award is reviewed indirectly through the conduit of the trial court's response to a motion for new trial on damages, it is the propriety of the judge's action rather than the jury's decision that is reviewed. Thus the abuse of discretion standard of review applies. *Sam's Style Shop v. Cosmos Broadcasting Corp.*, 694 F.2d 998, 1006 (5th Cir.1982). The test for review has been articulated several ways: there is no abuse of discretion unless there is a complete absence of evidence to support the verdict, unless it is so excessive that no reasonable juror, unswayed by passion or prejudice, could have awarded that amount, unless the award was contrary to all reason, or unless the award shocks the judicial conscience. *Id. See also, Pope v. Rollins Protective Services Co.*, 703 F.2d 197, 207 (5th Cir.1983).

 In *Breaux v. Schlumberger Offshore Services*, 817 F.2d 1226, 1232 (5th Cir.1987), a detrimental reliance case based

on Louisiana law, this court acknowledged that Louisiana law forbids an award of damages based on speculation. *Dousson v. South Central Bell,* 429 So.2d 466, 469 (La.App. 4th Cir.), *writ denied,* 437 So.2d 1135 (La.1983). However, compensation for lost profits need not be determined with mathematical precision. Reasonable certainty suffices to permit a court to determine the extent of damages. *Breaux* at 1232. *See Ellwest Stereo Theatres, Inc. v. Davilla,* 436 So.2d 1285, 1288 (La.App. 4th Cir.), *writ denied,* 442 So.2d 454 (La.1983).

During the separate trial on damages, Stokes and Georgia–Pacific each had an economic expert testify at length. Both experts were thoroughly cross-examined. Georgia–Pacific's expert testified that Stokes in fact profited from the arrangement with Georgia–Pacific in the amount of $30,000. Stokes' expert's estimate of the damages ranged from $1,201,000 to $3,919,-302, depending upon the length and terms of the failed contract. The jury's award clearly falls within this range. Consequently, the trial judge did not abuse his discretion by denying Georgia–Pacific's motion for a new trial on damages.

### Prescription

We are unconvinced by Georgia–Pacific's lackluster contention that Stokes' claim in detrimental reliance sounds in tort and thus prescribed before he filed suit. Indeed, in its reply brief responding to Stokes' cross-appeal, Georgia–Pacific makes a forceful argument that an action in detrimental reliance sounds in contract. La.Civ.Code art. 1967 was enacted in the 1984 revision of the Obligations section of the Civil Code. It appears in Book III, Title IV, entitled "Conventional Obligations or Contracts." Furthermore, the eminent scholar who directed the drafting of the new articles expressly places detrimental reliance in the contract realm. Litvinoff, *Still Another Look at Cause,* 48 La.L.Rev. 3, 27–28 (1987). Accordingly, Stokes' cause of action is subject to a liberative prescription of ten years. La.Civ.Code art. 3499.

### Interest

In his cross-appeal Stokes objects to the trial court's award of interest from the date of judgment rather than from the date of judicial demand. Stokes correctly asserts that with respect to contractual liability, interest should run from the date on which the defendant was put in default, a date which is ordinarily no later than the date on which the plaintiff's petition was filed. La.Civ.Code art. 2000; *Alexander v. Burroughs Corp.,* 359 So.2d 607, 613 (La. 1978).

Georgia–Pacific argues, however, that interest may not run, even from judicial demand, on a debt whose amount is not ascertainable except by a court's award. La.Civ. Code art. 1999; *New Orleans v. United Gas Pipe Line Co.,* 517 So.2d 145, 164 (La.App. 4th Cir.1987), *cert. denied,* — U.S. ——, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988). Georgia–Pacific likens actions in detrimental reliance to those in quantum meruit and quasi-contract, where interest is due only from the date of judgment. *Pasquier, Batson & Company v. Ewing,* 430 So.2d 724, 730–31 (La.App. 2nd Cir.), *writ denied,* 435 So.2d 437, 441 (La.1983); *Capitano v. Huber, Hunt & Nichols, Inc.,* 359 So.2d 308, 314 (La.App. 4th Cir.1978).

Because an obligation to pay money damages under quasi-contract, quantum meruit, and detrimental reliance arises by operation of law rather than by an express contractual agreement, Georgia–Pacific has the better argument. Thus the trial court's award of interest from the date of judgment was proper.

The judgment of the trial court is in all respects

AFFIRMED.