688 So.2d 581 (1996)
Reggie NOLAN d/b/a Reggie Nolan Insurance Agency, Plaintiff-Appellee,
v.
COMMONWEALTH NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 28777-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1996.
Opinion Reaffirming Decision after Grant of Rehearing January 22, 1997.
Writ Denied April 18, 1997.
*582 Gist, Methvin, Hughes & Munsterman by DeWitt T. Methvin, Jr., Alexandria, for Defendant-Appellant.
Johnson & Placke by Don H. Johnson, Monroe, for Plaintiff-Appellee.
Before NORRIS, BROWN and CARAWAY, JJ.
CARAWAY, Judge.
In this breach of contract action, the trial court found that the defendant insurance company had in bad faith failed to pay its former independent broker for commissions on policies he had sold. The trial court awarded damages in the amount of the unpaid commissions, plus legal interest and additionally awarded "general damages" for "mental anguish" and attorney's fees for the bad faith breach under La.C.C. art. 1997. The company appeals the judgment contesting only the award of general damages and attorney's fees. For the reasons expressed below, we reverse the award of general damages and attorney's fees.

Facts and procedural background
Reggie Nolan, a licensed independent insurance agent, contracted with Commonwealth Life Insurance Company in June, 1991, to solicit applications for life insurance, accident and health insurance, and annuity policies written by Commonwealth. Nolan's status was described in the contract as an independent contractor or an independent insurance agent allowing him to market and sell insurance policies offered by various companies. Under the terms of the contract, Commonwealth agreed to pay Nolan commissions on the policies he sold from the insurance premiums paid to the company. The contract provided, however, for Nolan's forfeiture of such commissions under the following provision:
11. Should Agent at any time endeavor to induce any representative of Company to discontinue his Contract with Company, or any policyholder to relinquish his policy written and issued by Company, Agent shall forfeit any and all commissions to which he might otherwise have been entitled under this Contract.
Nolan concentrated his efforts on selling Medicare supplement policies. Because Commonwealth's rates for Medicare supplement *583 policies were competitive and because Commonwealth paid higher commissions than other companies, Nolan began selling a large number of Medicare supplement policies issued by Commonwealth. Moreover, when an unrelated insurance company represented by Nolan quit carrying Medicare supplement policies and raised rates on existing contracts, many of Nolan's clients switched to Commonwealth.
In 1993 and 1994, Commonwealth dramatically increased the price of its Medicare supplement policies. Robert Tims, president of Commonwealth National Insurance Company, testified the rate increases were required by changes in the Medicare program and increases in medical costs. Tims also asserted the more expensive Commonwealth policy offered greater benefits than the less expensive policies offered by its competitors.
Tims asserted that in 1994, Commonwealth determined the attrition rate for Nolan's customers was twice as high as other independent insurance agents who represented Commonwealth. This discovery prompted Commonwealth in January, 1994, to mail customer service surveys to its former policyholders. These surveys contained simple declarative statements and then provided a blank to answer by checking yes or no. The survey contained the following statements: "The insurance plan was competitively priced," and "My agent contacted me about another company and encouraged me to change plans." The survey form also solicited "other comments" and provided space for specific statements by the former policyholder regarding the services received from Commonwealth.
At trial, Nolan introduced the six surveys returned to Commonwealth on which individuals had checked "yes" next to the statement concerning agent solicitation. Four of these individuals testified at trial on Nolan's behalf and denied checking "yes" in response to that question. One witness asserted that she was left handed and made her check marks in the opposite manner from the one marked on her survey form. All former Commonwealth customers who testified based their decision to change companies on the dramatic rate increase. Commonwealth produced none of its employees who actually processed the disputed survey forms.
Based upon its position that Nolan had violated the forfeiture provision of the contract quoted above, Commonwealth notified Nolan in February, 1994, that it was terminating their contract and informed him that his commissions had been forfeited because of his inducement of policyholders to switch to other companies. Nolan thereafter brought this suit asserting Commonwealth's bad faith breach of the contract and seeking to restore his rights to commissions which by the time of trial were unpaid in the amount of $19,796.68. Additionally, Nolan sought damages for the humiliation, embarrassment, inconvenience, and mental anguish for Commonwealth's bad faith withholding of the commissions.
Following trial, the district court found that Nolan did not violate the contract by inducing policyholders to relinquish their policy with Commonwealth. The trial court believed the witnesses who claimed their surveys had been altered and found that Commonwealth had made additions to the forms to justify its actions. The trial court explicitly found Commonwealth acted in bad faith. Rejecting Commonwealth's argument that the measure of damages should be the commissions plus interest, the trial court awarded Nolan general damages of $10,000 and attorney fees of $7,500, in addition to the unpaid commission.
Without disputing the trial court's determination of bad faith, Commonwealth argues that La.C.C. art. 2000[1] provides for the award of interest for the breach of an obligation to pay money which is the only measure of damages for its breach of the contract. Commonwealth further argues that *584 the trial court misapplied La.C.C. art. 1997[2] in determining that the nonpecuniary award for mental anguish was a direct consequence of its breach.

Discussion
The contract between these parties was a commercial contract governing the relationship of Nolan, as an independent insurance agent, with Commonwealth, one of the companies for which Nolan sold insurance. Following Nolan's performance under the contract in selling a policy, Commonwealth's corresponding obligation called for payment to Nolan of monthly commissions out of the premiums which Commonwealth received during the life of the policy. Nolan's commissions were declared to be vested under the contract and would remain owed to him despite the ability of either party to withdraw at will from the contract. Nolan's vested right to his commissions could be forfeited by his breach of the prohibition against his inducement of a policyholder to drop a Commonwealth policy.
The district court found that Commonwealth made a bad faith effort to avoid its obligation to pay commissions by falsely asserting Nolan's breach of the forfeiture provision based upon the policyholders' survey responses which were found to have been altered by Commonwealth. Commonwealth does not dispute the breach of the obligation to pay commissions nor does it contest the finding of bad faith which appears supported in the record. Instead, the issue on appeal is the propriety of the trial court's measure of damages for this bad faith breach of an obligation to pay money, which, as described by the trial court's ruling, included "general damages" for "mental anguish" and attorney's fees.
The newly revised Civil Code Articles 1996, 1997, 1998 and 2000 have as their source former Articles 1934 and 1935. La. C.C. arts. 1934 and 1935 (1870). Article 1934 provided for the calculation of damages, including damages for a bad faith breach (present Article 1997), in all contractual settings other than "where the object of the contract is any thing but the payment of money." Article 1935, the source article for the present Article 2000, then stated that interest is the sole measure of damages for the breach of an obligation to pay money. Both Article 2000 and its source Article 1935 contain the statement that the obligee recovers interest as his damages "without having to prove any loss, and whatever loss he may have suffered he can recover no more." La.C.C. art. 2000. (Emphasis supplied).
Discussing the theory of damages and their assessment for the breach of an obligation to pay money, Planiol stated:
The damages accorded to the creditor are always fixed in money; this is an old rule which is not expressed in the Civil Code, but which is understood. The judge can not enter any judgment other than for the payment of money. It is through error that certain judgments have been cited as giving to the creditor an indemnity other than money. It follows from that that the default of payment of a sum of money does not give rise to the allocation of compensatory damages; as the original object of the debt is already money, the amount of the prejudice that the creditor suffers is entirely fixed in advance; his loss is equal to the sum which was due him. The fixing of damages because of inexecution consists only of obligations to do, or not to do, and obligations to give whose object is something other than money. Debts of money can only give rise to interest for the delay spoken of in paragraph 2 of this chapter.
Planiol Civil Law Treatise, Vol. 2, Part 1, § I.A.224 (1956).
Since the obligation to pay money has for its object the essence of all pecuniary awards, money, the possibility of nonpecuniary damages for its breach, at least for a good faith breach, is certainly out of the question. However, Commonwealth's breach was found to be in bad faith. Nonpecuniary damages, which had as their source Article 1934(3), are damages for mental anguish, *585 inconvenience, humiliation and embarrassment. These damages certainly would appear to have relevance to a bad faith breach particularly since, as explained by the drafters of new Article 1998, nonpecuniary loss in civilian doctrine is "damage of a moral nature which does not affect a `material' or tangible part of a person's patrimony." Comment (d), Revision Comment1984; C.C. art. 1998, citing Litvinoff, "Moral Damages," 38 La. L.Rev. 1 (1977). Nevertheless, the remediation of moral damages does not appear to be the focus of Article 1997, but instead is addressed under La.C.C. art. 1998[3] and may result irrespective of bad faith under the circumstances described therein. See Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La. 1992).
As to the possibility of an award of nonpecuniary damages for a bad faith breach under the prior code provisions, former paragraphs (2) and (3) of Article 1934 set forth successively the measure of bad faith damages and nonpecuniary damages. Although a bad faith breach allowed for the possibility of an award for unforeseen damages, those damages nevertheless appeared limited to the indemnification of the immediate and direct pecuniary consequences of the breach leaving no room for the discretion of the trier of fact to impose nonpecuniary damages. Article 1934(3) in its second paragraph indicated this limitation, as follows:
"In the assessment of damages under this rule [Article 1934(3)], ... much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules [Article 1934(1) and (2)] as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor." [bracketed references and emphasis supplied]
Consequently, there appears to be no case indicating that the unforeseeable damages allowable under former Article 1934(2) for a bad faith breach included unforeseen, nonpecuniary loss or prejudice sustained by the obligee.[4] Article 1997, which has taken the place of Article 1934(2), does not reflect a change in the law.
More significantly, as emphasized by the revision comment for Article 1998, "mere worry or vexation is not a compensable nonpecuniary loss." Comment (e), Revision Comment1984. Elston v. Valley Electric Membership Corporation, 381 So.2d 554 (La. App. 2d Cir.1980). Such frustration and worry is always present and therefore foreseeable with every breach of contract, and until it rises to a more substantial level, it is viewed as a risk accepted by the parties in contracting. In this case, there was no evidence that the trial court's award for mental anguish was based upon deliberate actions by Commonwealth intending to raise the frustration level of Nolan any higher than what it would have been had Commonwealth simply been unable to pay because of a financial inability. The trial court, in attempting to explain the award for these damages, stated that Nolan was aggrieved by having to withdraw his savings in order to make payroll and pay his debts and by having to incur certain office expense of an unproven amount in preparing for the litigation. Nevertheless, the former loss is remedied directly by the award for legal interest and the latter, like the expense of attorney's fees discussed below, is more akin to litigation expense which *586 requires express statutory allowance for recovery.
With regard to unforeseeable, pecuniary loss which would be clearly within the enhanced allowance for damages under Article 1997 for bad faith, Nolan presented no evidence of such a loss. We therefore conclude that given the nature of this commercial contract, the specific and limited grant under Article 2000 of interest as damages for the breach of an obligation to pay money, the lack of proof that Commonwealth's actions were so vexatious or deliberate to have caused embarrassment or humiliation, and the lack of proof of any unforeseeable, pecuniary loss, the civil code's provisions for the measurement of damages do not authorize the trial court's $10,000 award for "general damages."[5]
We likewise reverse the trial court's award for attorney's fees in this case. The contract did not provide for such award. Therefore, the general rule that the successful litigant cannot recover attorney's fees except where authorized by statute or contract applies even in this case of bad faith conduct. General Motors Acceptance Corporation v. Meyers, 385 So.2d 245 (La.1980) and Lloyd v. Merit Loan Company of Shreveport, Inc., 253 So.2d 117 (La.App. 2d Cir.1971), writ denied, 259 La. 1050, 254 So.2d 462 (1971). Contrast, La.C.C. art. 1958 regarding attorney's fees for rescission for fraud in the formation of a contract.

Conclusion
For the reasons expressed above, the awards of general damages and attorney's fees are REVERSED. Costs of this appeal are assessed to appellee.
REVERSED.
NORRIS, J., concurs in the result.
Before NORRIS, HIGHTOWER, BROWN, CARAWAY and PEATROSS, JJ.

ON REHEARING
CARAWAY, Judge.
This court granted a rehearing before a five-judge panel pursuant to URCA Rule 2-18.7 to reconsider the correctness of its original opinion. We now reaffirm and reinstate the original opinion.
NORRIS, J., concurs in part and dissents in part with written reasons.
BROWN, J., concurs in part and dissents in part for the reasons assigned by NORRIS, J.
NORRIS, Judge, concurring in part and dissenting in part.
I concur with the majority's reversal of the trial court's award of attorney fees. However, I respectfully dissent from that portion of the majority opinion reversing the general damage award of $10,000 for mental anguish, and would affirm that part of the trial court's judgment.
The record clearly and convincingly establishes that Commonwealth Life was guilty of fraud and bad faith in its actions toward plaintiff. Fraud refers to a strategy to take unfair advantage of another party. Bad faith means the intentional and malicious failure to perform. See La C.C. art.1997, Comment (c).
Commonwealth Life schemed to deprive Nolan of his commissions through fraudulent, intentional and malicious actions in breach of their contract. This conduct was obviously intended to aggrieve the feelings of its obligee, Nolan. The record supports the trial court's obvious credibility determination that Nolan experienced great stress due to worry over whether he would be able to pay ordinary living and business expenses because of Commonwealth's actions. Nolan was forced to take extraordinary means in order to meet those obligations; his activities were limited because of a lack of money. Commonwealth's intentional bad faith breach forced *587 him to worry over and defend a civil action not only in Louisiana but also in Mississippi. The trial court also heard, and obviously accepted, Nolan's testimony that he suffered substantial stress and anguish, manifested by painful fever blisters which were still symptomatic at the instant trial, as a result of Commonwealth's actions.
The trial court was in the best position to determine Commonwealth's intent and the degree of worry, stress and vexation visited on Nolan by Commonwealth's actions. Its factual finding that Nolan suffered substantial mental anguish as a result of Commonwealth's actions is, in my opinion, not clearly wrong.
Article 1998 provides:
Art. 1998. Damages for nonpecuniary loss
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
(Emphasis added.)
Intent is a question of fact. See, e.g., United Investors Life Ins. Co. v. Alexander, 27,466 (La.App. 2d Cir. 11/1/95), p. 5, 662 So.2d 831, 834. Absent admission of such, which is rare, intent must be proven by inferences from surrounding facts and circumstances. In the instant case, the circumstances of this record justify the conclusion that Commonwealth, by its now undisputed bad faith and probably fraudulent breach, intended to aggrieve the feelings of Nolan.
For these reasons, I believe the trial court was not clearly wrong in its award of $10,000 in mental anguish.
NOTES
[1] Civil Code article 2000 provides, in pertinent part, as follows:

When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more.
[2] Civil Code article 1997 states:

An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.
[3] Civil Code article 1998 states:

Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
[4] In two prior cases of this court where a bad faith breach was proven, the court, with no discussion of Article 1934(3)'s narrow allowance for nonpecuniary damages, reached two opposite conclusions regarding the allowance for damages for inconvenience, worry and anguish. Morse v. Oates, 11 La.App. 462, 123 So. 439 (La.App. 2d Cir.1929), holding that such nonpecuniary damages were too remote to come within the scope of former Article 1934(2); and Modisette v. American Integrity Ins. Co., 297 So.2d 498 (La.App. 2d Cir.1974), holding that the "rather nominal award of $500" was supported by the bad faith breach.
[5] The argument that this defendant's bad faith should not go unpunished is clearly contrary to the Louisiana view that punitive damages to punish the obligor are not generally allowable except for a few statutory exceptions. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978). Nevertheless, the threat of unforseen damages under Article 1997 does act as a deterrent whether or not they actually exist and are proven in a given case.