# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 1, 2011

No. 10-30005

Lyle W. Cayce
Clerk

WATER CRAFT MANAGEMENT, L.L.C.; DOUGLAS WAYNE GLASCOCK; NICK A. MARTRAIN,

Plaintiffs-Appellees Cross-Appellants

v.

MERCURY MARINE, A Division of Brunswick Corp.,

Defendant-Appellant Cross-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:99-CV-1031

Before JONES, Chief Judge, JOLLY, and GARZA, Circuit Judges.

PER CURIAM:[*]

In this lawsuit, Mercury Marine ("Mercury") seeks reversal of the district court's award of damages to Water Craft Management, L.L.C., and its two corporate officers (collectively "Water Craft") for claims of detrimental reliance and fraudulent misrepresentation. Water Craft contests the validity of the contracts between the parties and the court's award of damages to Mercury for its counter claims. For reasons discussed below, we REVERSE the district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30005

court's judgment on the claims of detrimental reliance and fraudulent misrepresentation and VACATE the damage awards for Water Craft, Douglas Glascock, and Nick Martrain. We AFFIRM the remainder of the district court's judgment.

I

This protracted litigation centers around a series of meetings and two sales agreements executed by Mercury, a manufacturer of outboard motors, and Water Craft, an LLC formed by Douglas Glascock and Nick Martrain. The LLC operated a marine dealership, LA Boating Centre, in Baton Rouge, Louisiana. In November 1996, after discussions with Mercury representatives, Water Craft executed a Sales & Service Agreement ("SSA"), which made Water Craft a non-exclusive Mercury dealer. The SSA stated that prices and discounts for Mercury products would be based on lists published by Mercury, which the manufacturer could freely revise. The SSA also contained an integration clause that provided the contract was the "entire agreement" between the parties and that the SSA "replace[d] all prior agreements between the parties." The SSA could only be modified in a writing signed by both parties.

In spring 1997, the parties had a second series of discussions about possible pricing discounts and whether Mercury had plans to make Travis, a competing marine store, a Mercury dealer. A few months later, Water Craft executed a second SSA, which was almost identical to the first agreement. Months passed, Water Craft's finances worsened, and eventually, the dealership stopped paying Mercury for merchandise. By August 1998, Water Craft's finances were so poor that Glascock and Martrain wanted to shut down the store. Mercury representatives dissuaded the men from closing the marine dealership by promising additional financing, which never actually materialized. Glascock funneled an additional $50,000 into the dealership. Despite the injection of capital, the store continued losing money and eventually closed.

No. 10-30005

After this, Water Craft, Glascock, and Martrain sued Mercury in Louisiana state court, alleging violations of federal antitrust law and various state law claims including breach of contract, detrimental reliance, fraud, and misrepresentation. Mercury removed the lawsuit to federal court. Before trial, the district court granted Mercury's motion for summary judgment on Water Craft's claims of intentional and negligent fraudulent misrepresentation. *Water Craft Mgmt., L.L.C. v. Mercury Marine*, 361 F. Supp. 2d 518, 562 (M.D. La. 2004) (*Water Craft I*).

At trial, the district court considered the SSAs and several discussions between the parties. Based on that evidence, the court determined that Mercury had not breached the terms of the SSAs. The district court also concluded that Water Craft had proven its claims for detrimental reliance and fraudulent misrepresentations, but that Mercury had not violated the Robinson-Patman Act. *Water Craft I*, 361 F. Supp. 2d at 526–27. Additionally, the court ruled that Mercury could recover damages for its counterclaims. Mercury appealed and we affirmed the Robinson-Patman ruling, but declined to consider the state law questions for procedural reasons.[1] *Water Craft II*, 457 F.3d at 487.

On remand, the district court held a third bench trial to determine damages. Although Water Craft sought millions in damages, the trial court determined that Water Craft had failed to present evidence supporting its damage estimates. The trial court awarded the dealership $50,050, the value of a note Glascock had borrowed to keep the store open. Then, the district court awarded $200,000 to Martrain, and $250,000 to Glascock, individually, for pain and suffering, humiliation, and anxiety. The district court denied Water Craft's claim for attorney's fees in connection with its fraudulent misrepresentation

---

[1] The state law claims were not properly before us because the trial court had not entered a final judgment for those claims. *Water Craft Mgmt. L.L.C. v. Mercury Marine*, 457 F.3d 484, 487 (5th Cir. 2006) (*Water Craft II*).

No. 10-30005

claim. The court awarded Mercury damages for Water Craft's unpaid merchandise accounts. Both parties appeal the rulings and damage awards.

## II

The parties have appealed virtually every aspect of the district court's ruling and amended judgment. We first consider the district court's decisions as to Mercury's claims. Then, we turn to the counterclaims.

We review rulings of fact for clear error and legal conclusions de novo. *Water Craft II*, 457 F.3d at 488 (citations omitted). We will reverse a ruling of fact for clear error only when we have a "definite and firm conviction that a mistake has been committed." *Id.* Where a determination on the admissibility of evidence involves a substantive legal decision, the standard of review is two fold. *Stokes v. Georgia.-Pacific Corp.*, 894 F.2d 764, 767 (5th Cir. 1990) (citations omitted). First, we review the validity of the underlying legal analysis de novo. *Id.* Then, we review the trial court's evidentiary ruling for an abuse of discretion. *Id.*

## A

Water Craft contends that the district court erred by concluding the SSAs were valid contracts, arguing that the marine dealership was fraudulently induced to enter into the agreements. Mercury contends, however, that the district court erred by ruling that Water Craft had proven detrimental reliance and fraudulent misrepresentation.

## 1

Water Craft's contentions regarding the SSAs' validity depends on parol evidence.[2] Due to the binding integration clauses in the SSAs, the district court

---

[2] In their briefs, the parties argue at length whether the district court erred by admitting and considering parol evidence. We do not address these arguments, however, because neither party appealed the court's interpretation of the SSAs' terms. Therefore, other than our consideration of parol evidence in this section, it is unnecessary to analyze the district court's various evidentiary rulings.

declined to consider preliminary discussions between the parties that occurred prior to the first SSA's execution. Water Craft contends that had the district court considered these agreements as part of the contract, the court would have found the representations fraudulent and then, Water Craft's consent to the first SSA would have been "vitiated, rendering the agreement null."

In Louisiana, a court may not consider parol evidence to alter the terms of a "written agreement when the contract is a complete and accurate statement of all the terms agreed upon by the parties." *Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 768 (5th Cir. 1990); *see also* LA. CIV. CODE ANN. art. 2046 (2010). A contract's integration clause does not automatically bar consideration of parol evidence, but if an agreement contains such an integration clause, we must examine the facts and the contract's substance to determine whether the agreement properly reflected the parties' intentions. *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1328 (5th Cir. 1994); *Condrey v. Suntrust Bank of Ga.*, 429 F.3d 556, 564 (5th Cir. 2005). Admission of parol evidence may be based on an allegation of fraud or misrepresentation. *Bass v. Coupel*, 671 So.2d 344, 353 (citing *Billingsley v. Bach Energy Corporation*, 588 So.2d 786, 790 (La. Ct. App. 1991). But "the mere admissibility of oral statements does not require an automatic finding that the statements" will vary or nullify a contract. *Bass*, 671 So.2d at 353. Rather, in Louisiana, the party alleging fraud must "produce competent evidence, sufficient to preponderate on a showing that the statements he now seeks to introduce into evidence were fraud." *Id.* If a court decides to admit the parol evidence, the trier of fact will then determine whether fraud was committed "based on [the court's] decision to give substantive weight to the parol evidence admitted." *Id.*

Here, Water Craft alleges that the preliminary discussions with Mercury fraudulently induced them to sign the first SSA. The evidence, however, does not show that Mercury officials misrepresented or omitted accurate information,

No. 10-30005

a requirement for fraud. *Taylor v. Dowling Gosslee & Assoc., Inc.*, 22 So.2d 246, 255 (La. Ct. App. 2009). The record shows that preliminary discussions about discounts and pricing amounted to promises for future conduct. While Mercury representatives may have stated that the motor manufacturer would offer discounts, representatives also stated that the special pricing programs would take three to four years to implement. Thus, these agreements do not suffice as evidence of fraud because fraud "cannot be predicated on unfulfilled promises or statements as to future events." *Dutton & Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La. Ct. App. 1992). Further, Water Craft closed the marine dealership within two years of opening, making it impossible for Mercury to fulfill the pledges within the promised time period. And, Water Craft failed to put forth evidence that demonstrated Mercury did not intend to perform the pledges at the time the pledges were made. *Id.* at 698. Because Water Craft cannot prove the statements in question were fraudulent, the dealership cannot demonstrate that they were fraudulently induced to enter into the valid and binding SSA.[3]

2

Mercury asserts several meritorious arguments as to why the district court erred by concluding that Water Craft had proven its detrimental reliance claim. It is unnecessary, however, to address these arguments because we find that Water Craft's reliance on the discussions was unreasonable as a matter of law.

To establish detrimental reliance, a party must prove by a preponderance of the evidence: "(1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the

---

[3] Water Craft also asserts that the second SSA was "null for lack of consent." Under Rule 28 of the Federal Rules of Appellate Procedure, we decline to reach the merits of this argument because Water Craft's briefing on the matter lacks citations to any legal authority. *Alameda Films SA de CV v. Authors Rights Restoration Corp., Inc.*, 331 F.3d 472, 483 & n. 34 (5th Cir. 2003).

No. 10-30005

promisee's detriment because of the reliance." *In the Matter of Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007); *see also* LA. CIV. CODE ANN. art. 1967 (2010). Courts may determine that a party's reliance on promises made outside of an unambiguous, fully-integrated agreement was unreasonable as a matter of law. *Drs. Bethea, Moustoukas, and Weaver LLC v. St. Paul Guardian Ins. Corp.,* 376 F.3d 399, 403-04 (5th Cir. 2004)*; Omnitech*, 11 F.3d at 1330. Contrary to both parties' assertions, a detrimental reliance claim does not require a determination of whether we should or should not consider parol evidence. Instead, we focus on the reasonableness of a party's professed reliance upon promises made outside the scope of a "fully-integrated written agreement" between the parties. *Omnitech*, 11 F.3d at 1329-30.

Water Craft's reliance on the oral agreements was unreasonable as a matter of law because the SSAs are unambiguous written contracts with well-defined terms and valid integration clauses. *See Omnitech*, 11 F.3d at 1330; *see also LaBarge Pipe & Steel Co. v. First Bank*, 550 F.3d 442, 464 (5th Cir. 2008) (holding that company with "vast experience" unreasonably relied on bank employee's statement that directly contradicted terms of bank's financing letter). Glascock and Martrain were knowledgeable marine dealers with decades of business experience. Both men had previously executed contracts with motor manufacturers. Further, Glascock had extensive dealings with Mercury as his previous stores were Mercury dealerships and he had participated on the Mercury dealer council. In light of this, the district court erred by concluding that Water Craft had reasonably relied on statements made by Mercury representatives. These conversations fell outside of the terms of the straightforward contracts, which detailed Mercury's pricing program and the parties' non-exclusive relationship. The contract also defined the integration clause, stating that all prior agreements were merged into the SSAs, which could

7

No. 10-30005

only be modified with a signed writing. Water Craft's professed reliance on the oral discussions, instead of the written agreements, was unreasonable.

3

Mercury argues that Water Craft failed to prove its misrepresentation claim and that the district court erred by awarding individual damages to Glascock and Martrain for this claim. We agree.

Before trial, Mercury submitted a motion for partial summary judgment, arguing that Water Craft's negligent and intentional misrepresentation claims failed as a matter of law. The trial court agreed, and granted summary judgment on tortious misrepresentation. We interpret this ruling to include both the negligent and intentional misrepresentation claims.

At trial before remand, the district court stated that it had "previously dismissed all tortious misrepresentation claims," then, the court stated it still had to decide "whether Mercury made fraudulent misrepresentations to the plaintiffs which caused plaintiffs to sustain damages." The court noted that a fraudulent misrepresentation claim could be brought in a contract action. But, instead of discussing the elements for misrepresentation in contract, the court's ruling defined the claim by relying on the elements used in a tortious misrepresentation claim.[4] And, the court's subsequent analysis failed to discuss how the alleged misrepresentations involved issues of contract formation. The district court was free to conclude that Water Craft had proven

---

[4] The district court's ruling relied on *Abell v. Potomac Ins. Co.*, in which we discussed Louisiana's standard for fraudulent misrepresentation in tort. 858 F.2d 1104, 1131 n. 33. For an action for fraud against a party to a contract a claimant must prove: 1) misrepresentation of true information; 2) the intent to obtain an unjust advantage or to cause damage to another; and 3) "the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton v. Standard/700 Associates*, 798 So.2d 60, 64 (La. 2001). The trial court's analysis failed to mention the third element.

misrepresentation in tort, but it could only do so if that court had reversed and vacated its summary judgment decision.  That did not occur here.

When the district court amended its final judgment after trial, the new judgment compounded the error.  Initially, the district court had awarded individual damages to Glascock and Martrain based on their "pecuniary losses of pain and suffering, humiliation, and anxiety."  Five months later, the court stated in the amended judgment that Water Craft's "state law tortious misrepresentation claim" was dismissed with prejudice, but then, the court awarded individual damages to Glascock and Martrain for their state law "misrepresentation claims, and their fraud claim sounding in tort."

Under Louisiana law, damages for contract-related claims are limited to pecuniary losses, unless a contract is intended to "gratify a nonpecuniary interest."[5]  LA. CIV. CODE art. 1998; *see also Nolan v. Commonwealth Nat'l Life Ins. Co.*, 688 So.2d 581, 584-5 (La. Ct. App. 1996).  A sales contract for boat motors does not qualify as a "nonpecuniary interest."  Therefore, in this contract dispute, the district court erred by awarding individual damages for pain and suffering.  *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 717-18 (E.D. La. 2009) (holding that contract to prepare a tax return did not constitute an agreement for a nonpecuniary interest, thus, plaintiff could not recover emotional damages for the breach of contract claim).

Further, Glascock and Martrain could not obtain individual damages for Water Craft's misrepresentation claim because a corporate officer "has no separate or individual right of action against third persons . . . for wrongs committed against or causing damages to the corporation."  *Glod v. Baker*, 851

---

[5] Comments to article 1998 state that "a contract made for the gratification of a nonpecuniary interest means one intended to satisfy an interest of a spiritual order such as a contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters or sentimental value." LA. CIV. CODE art. 1998.

No. 10-30005

So. 2d 1255, 1264 (La. Ct. App. 2003); *see also L & L Industries, Inc. v. Progressive National Bank*, 535 So. 2d 1156, 1158 (La. Ct. App. 1988)). Water Craft alleged that Mercury had lied about motor pricing programs, product discounts, and Mercury's relationship with a competing dealership. The purported acts were directed toward the company, not Glascock and Martrain.

Accordingly, under Louisiana law, the award of individual damages to Glascock and Martrain is prohibited.[6]

B

The district court awarded damages to Mercury for unpaid merchandise ordered by Water Craft and Boating Centres, Inc., a marine dealership owned by Glascock in Slidell, Louisiana. Water Craft and Glascock argue that the district court erred because the debts were due to Mercury's fraudulent misrepresentations. We do not consider this meritless argument because Water Craft failed to provide any facts or case law to support the assertion. *See* Fed. R. App. P. 28. The record also demonstrates that Water Craft failed to present evidence that contradicted Mercury's claims about the unpaid bills. Therefore, the district court did not err by awarding damages to Mercury for its counterclaims.

III

We REVERSE the district court's judgment as to Water Craft's claims of detrimental reliance and fraudulent misrepresentations, and we VACATE the damage awards to Water Craft, Glascock, and Martrain. We AFFIRM the judgment and award of damages to Mercury.

---

[6] Water Craft also argues that they are entitled to attorney's fees under article 1958 of the Louisiana Civil Code for this claim. Due to our holdings, however, Water Craft's assertion is moot.